UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM M. BYRD,
    Plaintiff,

v.

AVENTIS PHARMACEUTICALS, INC. and DEBRA EDMUNDS,
    Defendants.

Civil Action No. 04-11032-DPW

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS

Defendants, Aventis Pharmaceuticals, Inc. ("Aventis") and Deborah Edmunds ("Ms. Edmunds") (Aventis and Ms. Edmunds together, "Defendants"), submit this memorandum in support of their motion for summary judgment on all nine counts of Plaintiff's Complaint.

## INTRODUCTION

On August 2, 2002, Plaintiff William Byrd ("Plaintiff"), a former Aventis sales representative, filed a charge with the Massachusetts Commission Against Discrimination ("MCAD"), claiming that Aventis discriminated against him and ultimately terminated his employment on February 4, 2002 because of his age and race and in retaliation for his complaint of unfair treatment. The summary judgment record demonstrates that Aventis terminated Plaintiff's employment after counseling him for years about significant, sustained performance issues and after it learned that Plaintiff falsified an expense report and had not been truthful with respect to reporting call activity, infractions he admitted.

On April 15, 2004, Plaintiff filed his nine-count Complaint, alleging against Aventis "race/age discrimination and/or retaliation" in violation of Mass. Gen. L. c. 151B (Count I); "race/age discrimination and/or retaliation" in violation of 42 U.S.C. § 2000e, et seq. ("Title VII"), 42 U.S.C. § 1981 et seq. ("Section 1981"), and/or the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA") (Count II); wrongful termination (Count III); breach of contract (Count IV); and

breach of the implied covenant of good faith and fair dealing (Count V). Against the individual defendant, his former supervisor, Plaintiff alleges tortious (Count VI) and intentional interference with advantageous and/or contractual relations (Count VII). As to both defendants, Plaintiff alleges violations of his Massachusetts Civil Rights, Mass. Gen. L. c. 12, § 11I (Count VIII); and of his federal civil rights under 42 U.S.C. §§ 1983. For the reasons set forth below, Defendants are entitled to judgment on all claims as a matter of law.

## ARGUMENT

### I.  THE SUMMARY JUDGMENT STANDARD

The role of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990) (quoting Fed. R. Civ. P. 56 advisory committee's note); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Thus, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well settled that the mere existence of some alleged factual dispute will not defeat a properly supported summary judgment motion:

> [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted . . . . In essence . . . the inquiry . . . is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-52 (1986).

Summary judgment is often appropriate in employment discrimination cases where the party resisting judgment "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Feliciano de la Cruz v. El Conquistador Resort, 218 F.3d 1, 5 (1st Cir. 2000) (citation omitted); see also Zapata - Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 47 (1st Cir. 2002) (finding

summary judgment for employer appropriate when plaintiff presents "weak issue of fact as to pretext" and there is "strong independent evidence that no discrimination occurred"); Matthews v. Ocean Spray Cranberries, 426 Mass. 122, 127 (1997) (summary judgment is appropriate in employment discrimination cases where the defendant's motion demonstrates that the plaintiff is "unable to offer admissible evidence of the defendant's discriminatory intent, motive or state of mind sufficient to carry the plaintiff's burdens and support a judgment in the plaintiff's favor"); Wooster v. Abdow Corp, 46 Mass. App. Ct. 665, 673 (1999) (granting summary judgment for employer and holding that in order for plaintiff alleging discrimination to survive Rule 56 motion, he "must show something more than a conflict in the evidence regarding the employer's legitimate, nondiscriminatory explanation for the employment decision and the plaintiff's membership in a protected group").

II. **MOST OF PLAINTIFF'S DISCRIMINATION CLAIMS ARE TIME-BARRED**

    A. **Aventis Is Entitled To Summary Judgment On Plaintiff's Title VII, ADEA and G.L. c. 151B Discrimination And Retaliation Claims For Events Which Occurred Prior to October 6, 2001 Because Plaintiff Failed To File A Timely Charge Of Discrimination With Respect To Those Acts**

To bring a claim of discrimination or retaliation pursuant to G.L. c. 151B, a plaintiff must have filed a charge with the MCAD within six months[1] of the alleged discriminatory act. G.L. c. 151B, § 5. In order to bring a claim pursuant to Title VII or the ADEA, a plaintiff must have filed a charge within 300 days of the alleged discriminatory act. National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002); Campbell v. BankBoston, N.A., 327 F.3d 1, 10-11 (1st Cir. 2003); Luciano v. Coca-Cola Enterprises, Inc., 307 F. Supp. 2d 308, 324 (D. Mass. 2004). The time period begins to run from when the plaintiff is on notice of his claim. See, e.g., Williams v. Raytheon Co., 220 F.3d 16, 21 (1st Cir. 2000). Courts routinely grant summary judgment where plaintiffs have failed to file timely charges. Campbell, 327 F.3d at 10-11 (summary judgment upheld for failure to file timely charge);

---

[1] Effective November 5, 2002, the time for filing a charge pursuant to G.L. c. 151B was extended to 300 days. G.L. c. 151B, § 5.

3

Amer. Airlines v. Cardoza-Rodriguez, 133 F.3d 111, 123 (1st Cir. 1998) (same); Adamczyk v. Augat, Inc., 52 Mass. App. Ct. 717, 7723 (2001) (same).

Here, Plaintiff's cause of action for race and age discrimination accrued by September, 2000, since he testified that by the time he received the mid-year performance evaluation on September 18, 2000, he believed he was being discriminated against on the basis of his age and race. (Pl. Tr. 142, 160) Plaintiff also testified that by the time of the warning in September, 2001, he believed he was being retaliated against for his complaint of unfair treatment. (Pl. Tr. 230-232) Accordingly, Plaintiff's claims for Chapter 151B, Title VII and ADEA discrimination and retaliation based on the September 2000 performance evaluation, the November 2000 written warning, and the September 2001 final written warning are all time-barred. Since the only discrete act of alleged discrimination for which a timely charge is filed is Plaintiff's February 2002 discharge from employment, Aventis is entitled to summary judgment on those claims to the extent of events occurring prior to February 2, 2002.

Plaintiff filed his charge with the MCAD on August 2, 2002. Accordingly, as to Plaintiff's G.L. c. 151B claims, only those acts which occurred on or after February 2, 2002, six months before the August 2, 2002 filing date, are actionable. For Plaintiff's Title VII and ADEA claims, only those acts which occurred on or after October 6, 2001, 300 days before August 2, 2002, are actionable. As a result, the only action which can be the subject of those age and race discrimination and retaliation claims is the termination of employment on February 2, 2002.

**B.     Aventis Is Entitled To Summary Judgment On Plaintiff's § 1981 Claims That Are Based On Conduct Which Allegedly Occurred Prior To April 15, 2001**

Aventis is entitled to summary judgment on Plaintiff's Section 1981 claims for any conduct that purportedly occurred prior to April 15, 2001, because any claims based on such conduct are barred by the applicable statute of limitations. Actions brought pursuant to 42 U.S.C. § 1981 are governed by a state's personal injury statute of limitations. See Girard v. Donald Wyatt Detention Facility, 2001 U.S. Dist. LEXIS 2347, *6-7 (D.R.I. 2001). The Massachusetts personal injury statute of limitations is

4

three years. G.L. c. 260, § 2A. Therefore, the statute of limitations for Plaintiff's Section 1981 claim is three years. See Girard, 2001 U.S. Dist. LEXIS 2347, at *7.

Here, Plaintiff filed his complaint on April 15, 2004. Applying the three year statute of limitations to this case, to the extent that Plaintiff bases his Section 1981 race discrimination or retaliation claims on an event or events that occurred prior to April 15, 2001, his claims are time-barred. Therefore, Plaintiff's Section 1981 discrimination claims relating to his September 18, 2000 and November 11, 2000 performance evaluations are time-barred. The only events alleged by Plaintiff that survive the statute of limitations bar for Section 1981 are the September 2001 evaluation and the February 2002 termination.

### III. AVENTIS IS ENTITLED TO SUMMARY JUDGMENT ON THE REMAINING DISCRIMINATION CLAIMS BECAUSE AVENTIS HAS ARTICULATED LEGITIMATE REASONS FOR ITS ACTIONS AND PLAINTIFF CANNOT ESTABLISH PRETEXT

In determining liability for race and age discrimination under Title VII, 42 U.S.C. § 1981, the ADEA, and G.L. c. 151B, courts have applied the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see Feliciano de la Cruz, 218 F.3d at 5-6; Matthews, 426 Mass. at 127.[2] Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. If the plaintiff establishes that *prima facie* case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decisions. See Feliciano, 218 F.3d at 5-6; Matthews, 426 Mass. at 128. This is not a difficult burden, as explained by the First Circuit:

> The defendant's burden to "articulate" a legitimate reason is not a burden to persuade the court that he was in fact motivated by the reason and not by a discriminatory one. Rather, it is a burden of production – i.e., a

---

[2] The three-step analysis applied in Title VII discrimination cases applies to alleged violations of M.G.L. c. 151B. See Joyal v. Hasbro, Inc., 380 F.3d 14, 16 (1st Cir. 2004) ("Massachusetts case law uses a burden-shifting device akin to federal law to force the employer to supply reasons for his action once an easily made prima facie case is established."). Similarly, Courts apply the McDonnell-Douglas analysis to claims under the ADEA. Menard v. First Sec. Servs. Corp., 848 F.2d 281, 285 (1st Cir. 1988). Likewise, while 42 U.S.C. § 1981 applies only to race-based discrimination claims, claims of 42 U.S.C. § 1981 and Title VII "hinge upon identical legal standards." Conward v. The Cambridge School Committee, et al., 171 F.3d 12, 18-19 (1st Cir. 1999).

> burden to <u>articulate or state</u> a valid reason . . . The defendant can accomplish this by introducing admissible evidence which would allow the trier of facts rationally to conclude that the employment decision had not been motivated by a discriminatory animus.

<u>Johnson v. Allyn & Bacon, Inc.</u>, 731 F.2d 64, 70 (1st Cir.), <u>cert. denied</u>, 469 U.S. 1018 (1984).

    **A.**     **Aventis Has Articulated Legitimate Nondiscriminatory Reasons For Giving Plaintiff A Final Written Warning And For Terminating His Employment**

Assuming that Plaintiff could establish a *prima facie* case of race discrimination with respect to his September 2001 final written warning or of either race or age discrimination with respect to the termination of his employment, Plaintiff's claims still fail because Aventis has more than met its burden of articulating legitimate nondiscriminatory reasons for its actions and Plaintiff has no evidence of pretext.

Plaintiff had a long history of performance problems at Aventis. (Defendant's Local Rule 56.1 Statement of Facts Not In Dispute ("SOF"), ¶¶ 25-30). In accordance with its Coaching and Counseling Policy, Aventis counseled Plaintiff on numerous occasions regarding his multiple performance failures and policy violations and gave him multiple opportunities to improve. (SOF, ¶¶ 35, 37). Plaintiff's performance record at Aventis was characterized by performance deficiencies, such as lack of product knowledge, significant sample variances and failure to provide call notes immediately after sales calls. Plaintiff admitted that many of the above observations regarding his performance were accurate. (SOF, ¶¶ 25-30).

By September 2001, Plaintiff's performance had not significantly improved in several areas. (SOF, ¶ 49). Consistent with Aventis' Coaching and Counseling Policy, on September 5, 2001, Plaintiff received a final written warning. The final written warning stated that while Plaintiff had met <u>some</u> of the expectations set forth in his November 2000 written warning, several of the expectations remained unmet. Areas mentioned as still below expectations included, for example, the failure to record call notes after detail calls or to adequately communicate with his manager. The final written warning also referenced a large sample variance that Plaintiff not only sustained but failed to report to

Ms. Edmunds. Ms. Edmunds identified business expenses claimed by Plaintiff that were outside Aventis' expense policy. (SOF, ¶ 50).

Plaintiff acknowledged many of these shortcomings during his deposition. Plaintiff admitted that he did not send team meeting updates as requested (Pl. Tr. 154); that he did not consistently record sales calls immediately following the calls (Pl. Tr. 100, 157); that he did not include detail call information in his call notes (Pl. Tr. 157); that he failed to report personal miles (Pl. Tr. 127); that his administrative work was not always timely (Pl. Tr. 157); and that he had large sample variances (Pl. Tr. 146-147, 190). During his deposition, Plaintiff also admitted that he suffered from many of the infirmities reflected in performance feedback he received prior to the final written warning. For example, Plaintiff admitted that despite clear directives from his manager, he did refuse to target high volume physicians because he did not agree with his manager's approach. (Pl. Tr. 150-153) He also admitted that the safety violation incidents that Ms. Edmunds spoke with him about did in fact occur. (Pl. Tr. 183, 303-304)

Despite these long-standing performance problems, Aventis did not summarily discharge Plaintiff from employment. Rather, Aventis terminated Plaintiff's employment only after it learned that Plaintiff continued to misrepresent sales call activity reporting and falsified an expense report, after specific instruction on those issues.

Ms. List and Ms. Edmunds met with Plaintiff on or about January 18, 2002. During that meeting, Plaintiff admitted to Ms. List and Ms. Edmunds that he entered sales calls as detail calls so that he could appear to meet Aventis' sales call goals. (SOF, ¶ 52). Plaintiff acknowledged at the time that he was wrong. (SOF, ¶ 52-53). At Aventis, this falsification alone – without even considering all of Plaintiff's performance problems – constituted an independent ground for termination. (Minassian Tr. 33-34, 39)

Aventis also discovered that Plaintiff falsified an expense report, misrepresenting a golf outing with his brother, two doctors and a doctor's daughter as a hospital roundtable. (SOF, ¶ 53).

7

Compounding his misrepresentation, Plaintiff reported on his expense report that two doctors who had not, in fact, attended the golf outing were attendees. (Id.). Plaintiff previously had been advised how to report golf outings. (Pl. Tr. 134-135, 196)

At that meeting on January 18, 2002, when they were discussing these policy violations that Plaintiff had been warned about previously, Ms. List asked Plaintiff what he would do if he were in Ms. Edmunds' and Ms. List's positions. Plaintiff stated that he would "fire the person." (Pl. Tr. 200) As a result of Plaintiff's continued failure to perform and the falsified expense report and call activity, on February 4, 2002, Aventis terminated Plaintiff's employment. (SOF, ¶ 55).

Aventis has more than met its burden of establishing the legitimate basis for Plaintiff's termination. See, e.g., Scott v. Sulzer Corbomedics, Inc., 141 F. Supp. 2d 154, 173 (D. Mass. 2001), affirmed, 2002 U.S. App. LEXIS 229, *2 (1st Cir. 2002) (summary judgment for employer upheld on Title VII and G.L. c. 151B gender discrimination claim where "story . . . is not one of discrimination, but one of performance, of administrative deficiencies and inadequate sales, of careless inventory management and delinquent expense reporting;" record reflected periodic reviews and evaluations, emails, coaching letters and internal memoranda regarding plaintiff's administrative lapses, lack of accessibility, inability to accept constructive criticism, excessive degree of business expenses and failure to complete timely and complete expense reports and account for sales inventory in her possession and plaintiff offered no evidence of pretext).

B.   **Plaintiff Cannot Establish Pretext As Required By Federal and State Law**

Once the employer articulates a nondiscriminatory basis for its decision, the presumption of discrimination *disappears* and the burden shifts back to the plaintiff to prove, by a preponderance of the evidence, that the defendant's proffered reason for its decisions was not the real reason, but was a pretext for discrimination. See Texas Dep't. of Comt'y Affairs v. Burdine, 450 U.S. 248, 256 (1981). If the plaintiff does not prove that the reason was pretext, the plaintiff cannot prevail. Burdine, 450 U.S. at 256, Matthews, 426 Mass. at 128. The fact remains that a plaintiff in a discrimination suit

8

bears the ultimate "burden of proving that his [status in a protected category] was the determinative factor in his discharge, that is, he would not have been fired but for [that status]." Freeman v. Package Machinery Co., 865 F.2d 1331, 1335 (1st Cir. 1988).

Significantly, Plaintiff had no basis for his belief that Ms. Edmunds was discriminating against him on the basis of age and race. He felt she was not holding white employees to the same standards. (Pl. Tr. 260) However, when asked if there was anything other than that, Plaintiff could not come up with anything:

> Q: Is there something else?
> A: I really couldn't tell you right now. It was an on-going thing with her. As I mentioned earlier, starting from the maternity leave, when she returned, I had no idea why things went 360 degrees.
> Q: From before the maternity leave to afterwards?
> A: That's right.
> Q: It's just her treatment of you seemed to change?
> A: It didn't seem to change. It did change.

(Pl. Tr. 260-261)

As to his belief that Ms. Edmunds treated white or young employees differently, Plaintiff cannot make the showing required to establish pretext. To establish pretext based on disparate treatment of other employees, Plaintiff has the burden to:

> identify and relate specific instances where persons similarly situated in all relevant aspects were treated differently . . . [Thus] Plaintiff must identify other employees [outside the protected class] to whom he is similarly situated in terms of performance, qualifications and conduct without such differentiating or mitigating circumstances that would distinguish their situations)

Matthews, 426 Mass. at 129-130 (quotations and citations omitted). It is fundamental "that '[a] claim of disparate treatment based on comparative evidence must rest on proof that the proposed analogue is similarly situated in all material respects.'" Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 20-21 (1st Cir. 1999) (citations omitted); see also Smith v. Stratus Computer, Inc., 40 F.3d 11, 17 (1st Cir. 1994) cert denied, 514 U.S. 1108 (1995) (recognizing that employees cannot be characterized as similarly situated if there are "differentiating or mitigating circumstances that would distinguish their

9

situations."); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989) overruled in part on other grounds, Educadores Puertorriquenos En Accion v. Hernandez, 367 F. 3d 61 (1st. 2004) (plaintiff cannot establish pretext based upon disparate treatment unless plaintiff can prove that persons similarly situated "*in all relevant aspects were treated differently*") (emphasis added).

Plaintiff's claim of pretext fails because: (a) the record evidence is that Aventis treated similarly situated employees outside Plaintiff's protected categories similarly; (b) Plaintiff is unable to point to a single instance where Aventis failed to discipline a younger, or non-African-American sales representative who suffered from all of the performance infirmities afflicting Plaintiff and who falsified sales call activity and an expense report; and (c) simply disagreeing with Aventis' assessment of his performance does not suffice to establish pretext.

1.  **The Record Reflects That Aventis Treated Similarly Situated Employees Similarly**

Any notion that Aventis selectively enforced its policies against Plaintiff due to his race or age is undermined by the undisputed record evidence that his supervisor, Ms. Edmunds, gave a written warning to a 30 year old, female, Caucasian sales representative who reported to her because of sustained performance problems which she had been counseled about before. (SOF, ¶¶ 58-59). Ms. Edmunds observed that this employee lacked certain selling skills and product knowledge. Ms. Edmunds also had a concern that this employee was also not in her territory between 8:00 am and 5:00 pm daily. (SOF, ¶¶ 58-59) Thus, the undisputed evidence establishes that Ms. Edmunds treated her sales associates the same regardless of race or age when it came to addressing performance issues. Additionally, two of the sales representatives who reported to Ms. Edmunds Plaintiff's age or older have not received warnings. (Edmunds Dec., ¶ 11)

2.  **Plaintiff Has Failed To Identify A Single Employee With All The Performance Problems That He Had That Was Treated Differently**

While Aventis has demonstrated that it treated individuals that were similarly situated to Plaintiff in the same way that Plaintiff was treated, it is Plaintiff's burden to prove, by a preponderance

of the evidence, that similarly situated employees were treated differently. Matthews, 426 Mass. at 129-30. Plaintiff is unable to produce evidence of a single individual, outside his protected class, who suffered from <u>all</u> of the performance infirmities afflicting Plaintiff <u>and</u> who falsified sales call activity <u>and</u> who falsified an expense report and was not given performance evaluations, written warnings and/or ultimately terminated. Instead, revealing a fundamental misperception of his legal burden, Plaintiff relies on examples of individuals that he believed were treated differently for isolated policy violations. Assuming *arguendo* that Plaintiff's assertions with respect to these employees' policy violations were true, they are not "similarly situated." See Dartmouth Review, 889 F.2d at 19 (nature of infraction and knowledge of decision-makers must be sufficiently similar; "apples should be compared to apples").

While unable to point to a similarly situated individual who was treated differently, Plaintiff admitted that it would be appropriate to fire someone in his shoes:

> Q. Do you recall at this meeting [on January 18, 2002] that they [Ms. List and Ms. Edmunds] expressed frustration that issues kept repeating themselves with you?
> A. They said something, yes. I don't know if I would call it "frustration."
> Q. Didn't Chris List say, "Bill, what would you do if you were us?
> A. Yes, she did ask that question.
> Q. Didn't you say, "I would fire me?"
> A. No.
> Q. What did you say?
> A. I said, "I would fire the person."

(Pl. Tr. 200-201)

### 3. Plaintiff Cannot Establish That Aventis' Legitimate Nondiscriminatory Reasons Were Pretext By Disagreeing With Their Assessment Of His Performance

Unable to establish pretext by pointing to disparate treatment of similarly situated individuals, Plaintiff is left with nothing more than his own belief that he was performing commendably and his conjecture that the reason for Aventis' negative evaluation of his performance was age or race based bias. (Pl. Tr. 102) However, the case law under the employment discrimination statutes is well-settled that neither (a) an employee's opinion of his or her relative job performance, nor (b) the overall

11

soundness or fairness of an employer's business judgment has any bearing in determining whether the employer's articulated reason for an employment decision is pretext. See Keeler v. Putnam Fiduciary Trust Co., 238 F.3d 5, 12-13 (1ST Cir. 2001) (recognizing that whether the employer's criticisms of plaintiff were fair is "beside the point so long as they were not [age] motivated."); Feliciano, 218 F.3d at 8 ("even if rational trier of fact could infer . . .that [employer's] decision to fire [plaintiff] was 'unfair' (because she continued to perform her job well), that proof is insufficient to state a claim under Title VII."); Mesnick v. General Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991), cert denied, 504 U.S. 985 (1982) ("Courts may not sit as super personnel departments, assessing the merits – or event the rationality – of employers' nondiscriminatory business decisions.").

When seeking to raise an issue of pretext, it is not enough for a plaintiff to merely cast doubt on the wisdom of the employer's nondiscriminatory reason. See Mesnick, 950 F.2d at 825 ("courts may not sit as super personnel departments, assessing the merits – or even the rationality – of employers' nondiscriminatory business decisions"); Connell v. Bank of Boston, 924 F.2d 1169, 1181 (1st Cir.), cert. denied, 501 U.S. 1218 (1991) ("It is not enough for the employee to challenge, or even disprove, the validity or soundness of the stated reason. The employee must present evidence warranting a finding that the employer was not genuinely motivated by that reason.").

Simply put, Plaintiff cannot show that Aventis' actions in terminating him or giving him negative performance feedback were predicated upon the basis of his race or age. Rodriguez-Cuervos, 181 F.3d at 21 (granting summary judgment for employer where employee failed to present evidence that his demotion was predicated on the basis of his race or national origin). Indeed, during his deposition, when asked why he thought he was being discriminated against, Plaintiff could only speculate that because he received negative feedback that he disagreed with it must have been due to his race or age:

> Q. Is there something about that review [in September 2000] that you thought she [Ms. Edmunds] was treating you differently because of your age?
> A. It was just the total negativity of the review.

> Q. So your reaction was "It must be, because it's not truthful, it must be because of my age?"
> A. Or race, yes.

(Pl. Tr. 142-143)

In fact, since there was no basis for his perceived discrimination other than that he disagreed with Ms. Edmunds' assessment of his performance, Plaintiff at one time speculated that he was treated differently due to his gender:

> Q. You were never of the view that [Ms. Edmunds] was discriminating against you based on your gender?
> A. At my gender?
> Q. Yes.
> A. Not at that time, no.
> Q: Did you ever form that belief?
> A: It could have gone along with the race and age, yes.
> Q: Just for the same reason that you disagreed with her view of your performance, so it had to be race or age or gender?
> A: You could say that.

(Pl. Tr. 310)

Accordingly, there is no genuine issue of material fact with respect to Plaintiff's race or age discrimination claims and Aventis is entitled to judgment on those claims.

## IV. AVENTIS IS ENTITLED TO JUDGMENT ON PLAINTIFF'S RETALIATION CLAIM FOR ADDITIONAL REASONS

Plaintiff's retaliation claims under G.L. c. 151B, Title VII, the ADEA and Section 1981 fail for additional, separate and independent reasons.[3]

---

[3] Section 1981 prohibits race discrimination in the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contract relationship." Section 42 U.S.C. § 1981. Plaintiff's Section 1981 retaliation claim fails for the additional reason that the First Circuit Court of Appeals has not, since enactment of the Civil Rights Act of 1991, recognized that a cause of action for retaliation even exists under Section 1981. The scope of § 1981 with respect to retaliation is whether Plaintiff was pursuing statutory rights or enforcing contract rights. Buddingh v. South Chicago Cable, Inc., 830 F. Supp. 437, 441 (N.D. Il. 1993). Because Plaintiff's retaliation claim is based on his assertion that he was retaliated against because of his request for a meeting with Ms. List to contest his review as discriminatory, his allegation relates to his exercise of statutory rights (under Title VII), but does not relate to enforcement of contract rights. Id. (allegations of retaliation for filing an EEOC charge of discrimination not actionable under § 1981 because "plaintiff does not allege that defendants retaliated against her for any attempt to enforce contract rights, even as that term is broadly defined under the new Civil Rights Act of 1991"). But see Powell v. City of Pittsfield, 143 F. Supp. 2d 94 (D. Mass. 2001) (recognizing that First Circuit Court of Appeals has not addressed the question, but ruling that cause of action for retaliation under § 1981 does exist ). In any event, even if the claim exists, Plaintiff's claim fails for the additional reasons set forth above.

13

In order to state a *prima facie* case of retaliation, Plaintiff must show "[1] protected participation or opposition under Title VII known by the alleged retaliator; [2] an employment action or actions disadvantaging persons who engaged in protective activities; and [3] a causal connection between the first two elements [,] that is [,] a retaliatory motive playing a part in the adverse employment actions." Hazel v. U.S. Postmaster General, 7 F.3d 1, 3 (1st Cir. 1993), citing Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 33 (1st Cir. 1990); Sullivan v. Raytheon Co., 262 F.3d 41, 48 (1st Cir. 2001). If the plaintiff meets this initial burden, the employer then has an obligation to articulate a legitimate nondiscriminatory reason for the action. Once the employer has done so, the burden shifts back to the plaintiff to prove that the proffered reason for the employer's action was a pretext for retaliation.

Aventis is entitled to summary judgment because Plaintiff cannot establish a prima facie case of retaliation. First, it is not clear that Plaintiff can show protected activity because it is not clear his conversation with Ms. List about Ms. Edmunds on September 25, 2000 rose to the level of a complaint of discrimination. Assuming, *arguendo*, it did, Plaintiff could not make a showing of causation because he could not show that "but for" engaging in the protected conduct Aventis would not have taken the adverse action. See Hoeppner v. Crotched Mountain Rehab. Ctr., 31 F.3d 9, 12, 14-16 (1st Cir. 1994); Sullivan, 262 F.3d at 48. The mere fact that the adverse action followed the protected activity is not sufficient to show the requisite causal link. Mole v. University of Massachusetts, 442 Mass 582, 591-92 (2004). As the Supreme Judicial Court aptly noted, if the rule were otherwise,

> then a disgruntled employee, no matter how poor his performance or how contemptuous his attitude toward his supervisors, could effectively inhibit a well-deserved discharge by merely filing, or threatening to file, a discrimination complaint.

Mole, 442 Mass. at 592.

A plaintiff's subjective feelings that retaliation occurred without objective evidence is not sufficient proof of retaliation. See Hoeppner, 31 F.3d at 14; MacCormack v. Boston Edison Co., 423

14

Mass. 652, 663 (1996) (plaintiff failed to establish a prima facie case when he offered only subjective feelings of disappointment rather than substantial evidence of harm). Moreover, "[w]here . . . adverse employment actions or other problems with an employee predate any knowledge that the employee has engaged in protected activity, it is not permissible to draw the inference that subsequent adverse actions, taken after the employer acquires such knowledge, are motivated by retaliation." Mole, 442 Mass. at 594 (citations omitted). Courts routinely grant summary judgment on retaliation claims where the plaintiff fails to establish causation. Sullivan v. Raytheon Co., 262 F.3d 41, 49 (1st Cir. 2001) (summary judgment upheld for employer on retaliation claim where plaintiff failed to establish causal connection); Hoeppner, 31 F.3d at 14 (summary judgment upheld for employer on retaliation claim where employee was already on probation prior to filing claim); Dziamba v. Warner & Stackpole LLP, 56 Mass. App. Ct. 397 (2002) (summary judgment upheld for employer on retaliation claim where "expressions of dissatisfaction, warnings about unsatisfactory accomplishment, and not raising his salary had begun well before" employee's assertion of rights). Plaintiff's performance problems existed long before and continued well after his so-called complaint about Ms. Edmunds, thus, he cannot make the showing required for retaliation.

V.  **PLAINTIFF'S COMMON LAW AND MASSACHUSETTS CIVIL RIGHTS ACT CLAIMS FAIL BECAUSE THEY ARE BARRED BY THE EXCLUSIVITY PROVISIONS OF G.L. c. 151B**

In counts III, IV, V, VI, VII and VIII, Plaintiff recasts his discrimination and retaliation claims as separate causes of action for (a) wrongful termination (count III), (b) breach of contract (count IV), (c) breach of the implied covenant of good faith and fair dealing (count V), (d) tortious and intentional interference with advantageous and/or contractual relations against Edmunds (counts VI and VII), and (e) violation of the Massachusetts Civil Rights Act, G.L. c. 12, § 11I (count VIII). As is readily apparent from his Complaint and deposition testimony, Plaintiff bases each of these claims on the same alleged facts: that he was discriminated against based on his race and age and that he was retaliated

against for requesting a meeting with Ms. List after his September 2000 mid-year performance evaluation. (Compl., ¶¶ 43-44, 58-59, 62-63; Pl. Tr. 257-261)

It is well settled that G.L. c. 151B provides the "exclusive remedy for employment discrimination" and therefore preempts common law claims based on the same allegations. Frankina v. First Natl. Bank of Boston, 801 F. Supp. 875, 884-885 (D. Mass. 1992), *aff'd without op.*, 991 F.2d 786 (1st Cir. 1993); Charland v. Muzi Motors, Inc., 417 Mass. 580, 586 (1994); Green v. Wyman-Gordon, Co., 422 Mass. 551, 558 (1996) (plaintiff's common law claims barred where they are "merely recast versions" of discrimination claims under G.L. c. 151B).

Applying this exclusivity principle, Massachusetts state and federal courts summarily dismiss discrimination claims cloaked as common law causes of action: Choroszy v. Wentworth Inst. Of Tech., 915 F. Supp. 446, 451 (D. Mass. 1996) (wrongful termination public policy claim barred by G.L. c. 151B); Borase v. M/A-Com. Inc., 906 F. Supp. 65, 69 (D. Mass. 1995) (same); Melley v. Gillette Corp., 19 Mass. App. Ct. 511, 513 (1985), aff'd 397 Mass. 1004 (1986) (same); Frankina, 801 F. Supp. at 884-885 (breach of contract and implied covenant of good faith and fair dealing claims preempted by G.L. c. 151B). Similarly, the Court should enter summary judgment in Defendants favor on each of Counts III-VIII.

## VI. PLAINTIFF'S WRONGFUL TERMINATION CLAIM FAILS FOR ADDITIONAL REASONS

Even if his wrongful termination claim were not pre-empted by the exclusivity provisions of G.L. c. 151B, Plaintiff's claim fails for a separate reason. Under Massachusetts law, an individual who is employed at will generally "can be terminated at any time for any reason or for no reason at all." Smith-Pfeffer v. Superintendent of the Walter E. Fernald State School, 404 Mass. 145, 150 (1989). An at will employee has a claim for wrongful termination "only if the termination violates a clearly established public policy." King v. Driscoll, 418 Mass. 576, 582 (1994).

Redress is available when an employee is terminated for: (1) asserting a legally guaranteed right; (2) doing what the law requires; (3) refusing to do that which the law forbids; (4) reporting violations of criminal law; and (5) cooperating with a law enforcement agency. See Upton v. JWP Businessland, 425 Mass. 756, 757 (1997). Plaintiff does not allege any facts or circumstances that would permit him to claim that his discharge violated any of the recognized public policy exceptions to the at will employment rule. Accordingly, Aventis is entitled to summary judgment on Count III for this additional, independent reason.

## VII. PLAINTIFF'S TORTIOUS AND INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS AND/OR CONTRACTUAL RELATIONS CLAIMS AGAINST MS. EDMUNDS FAIL FOR ADDITIONAL REASONS

Even if Plaintiff's tortious and intentional interference claims against Ms. Edmunds did not fail because of the exclusivity provisions of G.L. c. 151B, his claims fail on the merits. To prevail on a claim of tortious/intentional interference with contractual/employment relations, a plaintiff must demonstrate: (1) an advantageous relationship with a third party; (2) that the defendant knowingly induced the third party to discontinue the relationship; (3) that the defendant's interference was both intentional and done with improper means or motive; and (4) that plaintiff was harmed by the defendant's actions. See Weber v. Cmty. Teamwork, Inc., 434 Mass. 761, 781 (2001); Harrison v. Netcentric Corp., 433 Mass. 465, 476 (2001); Shea v. Emmanuel College, 425 Mass. 761, 764 (1997); United Truck Leasing v. Geltman, 406 Mass. 811, 816 (1990); Alba v. Sampson, 44 Mass. App. Ct. 311, 314-15 (1998).

In the employment law context, a supervisor is conditionally privileged to take actions regarding a plaintiff's employment so long as the supervisor does not act with actual malice, *i.e.*, "for a spiteful, malignant purpose, unrelated to an [employer's] legitimate corporate interest." Weber, 434 Mass. at 782, citing Boothby v. Texon, Inc., 414 Mass. 468, 487 (1993); Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 476 (1992). This conditional privilege exists to protect corporate officials from liability because "their freedom of action directed toward corporate purposes should not

be curtailed by fear of personal liability." Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 663-64 (1981).

In Gram, for example, the court held that the conduct of plaintiff's supervisors in stating that they would like plaintiff out of their office, and objecting to an allegedly unauthorized mailing prepared by plaintiff to prospective customers and his use of certain sales aids, and ultimately, in terminating plaintiff, was privileged and could not support a claim for intentional interference with contractual relations. Id. at 663-65. See also Luciano, 307 F. Supp. 2d at 324 (summary judgment for employer/supervisors on intentional interference claim where plaintiff offered no facts to establish malice; plaintiff's disagreement with manager's opinion of her performance or response to complaint not sufficient); Scott, 141 F. Supp. 2d at 177 (summary judgment granted on intentional interference claim where plaintiff offered nothing but her insufficient claim of gender discrimination to demonstrate malice); Shea v. Emmanuel College, 425 Mass. 761, 764 (1997) (summary judgment for employer where record replete with examples of plaintiff's problems on the job and no facts to establish malice).

Here, there is absolutely no evidence to suggest that Ms. Edmunds acted for any reason other than to serve Aventis' legitimate business interest in addressing Plaintiff's performance issues or that Ms. Edmunds engaged in any conduct that could rise to the level of actual malice. Plaintiff's claim is based solely on his conclusory conjecture that Ms. Edmunds acted improperly in progressively disciplining him and terminating his employment. Such allegations, even if true (which Ms. Edmunds denies), are not sufficient evidence of the requisite spite or malignant purpose necessary for a malicious/intentional interference claim, because all the actions attributed to Ms. Edmunds were related to her activities in furthering Aventis' legitimate corporate interests. Accordingly, entry of judgment for Ms. Edmunds on Plaintiff's claim of malicious interference with employment relations is warranted as a matter of law.

## VIII. PLAINTIFF'S MASSACHUSETTS CIVIL RIGHTS CLAIM AGAINST AVENTIS AND MS. EDMUNDS FAIL FOR ADDITIONAL REASONS

Even if Plaintiff's MCRA claim were not pre-empted by the exclusivity provisions of G.L. c. 151B, Plaintiff's MCRA claim would also fail on substantive grounds. To invoke the MCRA, one must allege the deprivation of a constitutional or statutory right by means of threats, intimidation and coercion. However, since Plaintiff was an at-will employee, the termination of his employment did not deprive him of any rights protected by the MCRA. Webster v. Motorola, Inc., 418 Mass. 425 (1994) (in order to establish a MCRA claim, an at-will employee must identify interference with a secured right independent of any claimed right to continued at-will employment); Flesner v. Technical Communications Corp, 410 Mass. 805, 818-19 (1991) (holding that at will employee's claim under MCRA failed because employee had no constitutional right to maintain at-will employment). During his deposition, Plaintiff testified that the constitutional right at issue is his right to work at Aventis as a Sales Representative. (Pl. Tr. 261) As such, his claim fails as a matter of law.

Second, Plaintiff cannot establish that Defendants engaged in conduct sufficient to meet MCRA's "threats, intimidation or coercion" requirement. This standard requires a showing of an actual or potential <u>physical confrontation</u> accompanied by a threat of harm. Routine personnel actions and termination of at-will employment do not suffice. The Massachusetts Supreme Judicial Court has emphasized this rule of law:

> . . . . [T]his court [has] noted that all our opinions holding that a defendant was or might be liable under the State Civil Rights Act involved <u>an actual or potential physical confrontation accompanied by a threat of harm</u>.

Layne v. Superintendent, Mass. Corr. Inst., 406 Mass. 156 (1989) (emphasis added). See also Biggins v. Hazen Paper Co., 953 F.2d 1405, 1425 (1st Cir. 1992), vacated on other grounds, 113 S. Ct. 1701 (1993) (rejecting applicability of MCRA to wrongful discharge claim). In this case, Plaintiff has proffered no evidence that Defendants physically threatened him at any time. Accordingly, his claim fails as a matter of law for each of the above stated reasons.

## IX. PLAINTIFF'S SECTION 1983 CLAIM AGAINST AVENTIS AND MS. EDMUNDS FAILS AS A MATTER OF LAW

Plaintiff's Section 1983 Claim in Count IX fails as a matter of law because he cannot establish that he was injured as a result of "state action." 42 U.S.C. § 1983. By its terms, Section 1983 reaches only persons acting "under color of state law." Id.; Mendez v. Belton, 739 F.2d 15, 17 (1st Cir. 1984). Because neither Aventis nor Ms. Edmunds are "state actors," he cannot establish a Section 1983 claim under any set of circumstances.

### Conclusion

For all of the foregoing reasons, Defendants request that the Court enter summary judgment for them on the Complaint in its entirety.

Respectfully submitted,
AVENTIS PHARMACEUTICALS, INC. and DEBORAH EDMUNDS,

/s/ Joan Ackerstein
Joan Ackerstein (BBO# 549872)
Samia M. Kirmani (BBO# 634699)
JACKSON LEWIS LLP
75 Park Plaza
Boston, Massachusetts 02116
(617) 367-0025; FAX: (617) 367-2155