# EXHIBIT E

05/10/04  11:56 FAX 9082437599        AVENTIS EMPLOYMENT LAW                    ⓘ006

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                          SUPERIOR COURT
                                                       CIVIL ACTION NO.

WILLIAM M. BYRD,                    )
                                    )
            Plaintiff               )
                                    )
v.                                  )
                                    )
AVENTIS PHARMACEUTICALS, INC.,      )
and DEBRA EDMUNDS,                  )
                                    )
            Defendants.             )

EXHIBIT
# 18
10-18-04
BYRD

### COMPLAINT AND JURY DEMAND

#### . PARTIES

1.      Plaintiff William M. Byrd (hereinafter "Plaintiff") is a citizen of the

United States, and now and during the course of his employment with defendant resides

at 38 Meadowview Road, Milton, Massachusetts 02186.

2.      Defendant Aventis Pharmaceuticals, Inc. (hereinafter "Aventis") is a

foreign corporation incorporated under the laws of the State of Delaware, licensed to do

business in the State of Massachusetts, and is engaged in the production, marketing

and/or sale of pharmaceuticals throughout the United States, with a usual place of

business located at 3rd Avenue, Waltham, Massachusetts.

3.      Defendant Debra Edmunds (hereinafter "Ms. Edmunds") is an individual

residing at 308 Concord Road, Wayland, Massachusetts.

#### FACTS

4.      Plaintiff was hired and began working for Aventis on or about May 12,

1997.

5.    At the time of his hiring, Plaintiff had significant experience as a sale representative in the medical industry.

6.    Plaintiff was employed in the sales division of Aventis as a sale representative.

7.    Due to the inherently discriminatory selective enforcement of company policies used and approved of by Aventis, Plaintiff was terminated.

8.    Due to Aventis's wrongful practice of selective enforcement of company policies against minorities, Plaintiff was targeted for termination, while other non-minority employees were being allowed to not comply with those same policies.

9.    Aventis has a history and pattern of discriminating and retaliating against minorities in exactly the same manner as they did against the Plaintiff.

10.    When Aventis decides to terminate a minority employee it utilizes "selective enforcement" of its policies to accomplish this based on three (3) methods: i) falsifications of records; ii) not being a team player; and iii) failure to perform.

11.    Aventis alleges that the Plaintiff was terminated as a result of a purported falsified expense report and call activity and Plaintiff's alleged continuous failure to comply with established company guidelines.

12.    Aventis's stated reasons for termination is a pretext for the real reason that the Plaintiff was terminated.

13.    In 1999, Ms. Edmunds became the Plaintiff's District Manager with Aventis.

14.    Shortly thereafter, Ms. Edmunds went out on maternity leave.

2

15.     After returning from maternity leave, Ms. Edmunds began to degrade Plaintiff and treat Plaintiff differently from the other caucasian employees of Aventis.

16.     Prior to this time, Plaintiff received outstanding reviews for his work with Aventis.

17.     On or about September 18, 2000, Plaintiff received his mid-year performance review from Ms. Edmunds, which was completely inaccurate and negative.

18.     As a result of this Mid-Year review by Ms. Edmunds, and the fact he was being singled out and treated differently than other employees of Aventis, Plaintiff requested a meeting with his Regional Director at Aventis, Christine List (hereinafter "Ms. List").

19.     On September 25, 2000, Plaintiff first met with Ms. List, and subsequently met with Ms. List and Ms. Edmunds.

20.     Plaintiff requested this meeting to express his objection to his Mid-Year review because of the inaccuracies contained therein; to attempt to discover why Ms. Edmunds was apparently targeting him; to inform Ms. List that he was being discriminated against; and to request that he be transferred to another District Manager.

21.     During this meeting, Ms. List acknowledged that she informed Ms. Edmunds that her Mid-Year review was too negative against the Plaintiff.

22.     Although discrimination is a very sensitive issue, particularly for a current employee to raise, Plaintiff informed Ms. List at their meeting that he was being discriminated against.

3

23.     Plaintiff informed Ms. List that he was being treated differently because of his color; that he was required to do things other people were not; that he was being held to a higher standard; and that he was being criticized for things that other caucasian employees were not.

24.     Plaintiff also asked for a transfer to a new District Manager, which request Ms. List denied.

25.     As African-American, Plaintiff was required to excel above and beyond other caucasian employees at Aventis; otherwise he would be targeted and disciplined.

26.     As a direct result of requesting the meeting and expressing his concerns to Ms. List, on November 14, 2000, Ms. Edmunds provided Plaintiff with a written warning.

27.     Thereafter, Plaintiff was scrutinized even more closely than the other caucasian sale representatives at Aventis, and constantly singled out and disciplined for precisely the same things other caucasian employees were allowed to do.

28.     Although Plaintiff went to great lengths to accommodate the company policies and save his job, Aventis selectively enforced different policies in an attempt to find fault with his performance.

29.     After receiving a final written warning placing him on probation, Aventis stopped paying Plaintiff his bonus/commissions.

30.     Plaintiff asked Ms. Edmunds what he needed to do to get off probation and restore his bonus/commissions, and Ms. Edmunds informed him that he would never get off probation.

4

31.    At the National Sales Meeting of Aventis during the week of January 8, 2002, Plaintiff was one of three sales representatives who received the "Market Share Award on Allegra" from Aventis.

32.    On February 4, 2002, Aventis terminated the Plaintiff as an employee.

33.    Plaintiff believes he was terminated because of his race and/or age.

34.    Plaintiff performed his job functions in a satisfactory manner for Aventis, even receiving achievement awards.

35.    At the time Plaintiff was terminated, of the estimated 350 sale representatives employed by the Aventis in the New England area, there was only one (1) other African-American sale representative, and there were no other African-American sale representatives over the age of 40.

36.    Since Plaintiff was terminated, Aventis has hired other sales representatives under the age of 40.

37.    Plaintiff's record of employment was good and evidences a consistent pattern on behalf of Plaintiff to improve himself and to establish his qualifications for advancement.

38.    Plaintiff's work record clearly indicates he was qualified to serve as a sale representative.

### COUNT I - VIOLATION OF M.G.L. c. 151B
### (Race/Age Discrimination and/or Retaliation)

39.    Plaintiff herein repeats and incorporates by reference the allegations contained in Paragraphs 1 through 38 of his Complaint as if separately set forth herein.

40.    Aventis is an employer within the meaning of M.G.L. c. 151B, §1(5).

41.    Plaintiff is a member of a protected class under M.G.L. c. 151B.

5

42.   Aventis discriminated against Plaintiff based on race and/or age.

43.   By the selective enforcement of its policies against the Plaintiff and other minorities, Aventis has discriminated against the Plaintiff.

44.   As a result of and/or in retaliation for requesting a meeting with Ms. List in an attempt to stop the discrimination, the Plaintiff was further targeted and subsequently discharged from employment by Aventis.

45.   Aventis' conduct constitutes a violation of M.G.L. c. 151B.

46.   Aventis' actions and/or inactions were knowing, willful, and intentional violations of the law and committed with reckless disregard for Plaintiff's rights.

47.   As a result of Aventis' conduct, Plaintiff suffered damages including but not limited to, lost employment, lost wages and benefits, emotional distress, attorney's fees and costs.

WHEREFORE, Plaintiff demands judgment against Aventis in an amount to be determined, with interest, costs, attorney's fees, compensatory damages, punitive damage, and any other relief this court deems appropriate.

### COUNT II - VIOLATION OF 42 USC § 2000e et seq.
#### (Race/Age Discrimination and/or Retaliation)

48.   Plaintiff herein repeats and incorporates by reference the allegations contained in Paragraphs 1 through 47 of his Complaint as if separately set forth herein.

49.   Aventis is an employer within the meaning of 42 USC §§ 2000e et seq., 42 USC §§ 1981 et seq., and/or 29 USC §§ 621 et seq.

50.   Plaintiff is a member of a protected class under 42 USC §§ 2000e et seq., 42 USC §§ 1981 et seq., and/or 29 USC §§ 621 et seq.

51.   Aventis discriminated against Plaintiff based on race and/or age.

6

52.   By the selective enforcement of its policies against the Plaintiff and other minorities, Aventis has discriminated against the Plaintiff.

53.   As a result of and/or in retaliation for requesting a meeting with Ms. List in an attempt to stop the discrimination, the Plaintiff was further targeted and subsequently discharged from employment from Aventis.

54.   Aventis' conduct constitute violations of 42 USC §§ 2000e et seq., 42 USC §§ 1981 et seq., and 29 USC §§ 621 et seq.

55.   Aventis' actions and/or inactions were knowing, willful, and intentional violations of the law and committed with reckless disregard for Plaintiff's rights.

56.   As a result of Aventis' conduct, Plaintiff suffered damages including but not limited to, lost employment, lost wages and benefits, emotional distress, attorney's fees and costs.

WHEREFORE, Plaintiff demands judgment against the Aventis in an amount to be determined, with interest, costs, attorney's fees, compensatory damages, punitive damage, and any other relief this court deems appropriate.

## COUNT III
### (Wrongful Termination)

57.   Plaintiff herein repeats and incorporates by reference the allegations contained in Paragraphs 1 through 56 of his Complaint as if separately set forth herein.

58.   By the selective enforcement of its policies against the Plaintiff and other minorities, Aventis has discriminated against the Plaintiff.

59.   As a result of and/or in retaliation for requesting a meeting with Ms. List in an attempt to stop the discrimination, the Plaintiff was further targeted and subsequently discharged from employment from Aventis.

7

60.    As a direct and approximate result of the acts and/or omissions of Aventis, the Plaintiff suffered a diminution of incapacity, loss of front pay, loss of back pay, loss of employment and/or the opportunity for employment benefits, severe emotional distress, post traumatic distress, pain, suffering and other emotional and economic injuries and damages.

WHEREFORE, Plaintiff demands judgment against Aventis in an amount to be determined, with interest, costs, attorney's fees, compensatory damages, punitive damage, and any other relief this court deems appropriate.

## COUNT IV
### (Breach of Contract)

61.    Plaintiff herein repeats and incorporates by reference the allegation contained in Paragraphs 1 through 59 of his Complaint as if separately set forth herein.

62.    By the selective enforcement of its policies against the Plaintiff and other minorities, Aventis has discriminated against the Plaintiff.

63.    As a result of and/or in retaliation for requesting a meeting with Ms. List in an attempt to stop the discrimination, the Plaintiff was further targeted and subsequently discharged from employment from Aventis.

64.    The conduct of Aventis and its agents, principals, servants, employees and/or representatives was conducted in bad faith.

65.    Aventis has breached its contract with Plaintiff despite Plaintiff having provided consideration and/or having relied to his detriment on Aventis' promises.

8

66.     As a direct and approximate result of the acts and/or omissions of Aventis, the Plaintiff suffered a diminution of incapacity, loss of front pay, loss of back pay, loss of employment and/or the opportunity for employment benefits, severe emotional distress, post traumatic distress, pain, suffering and other emotional and economic injuries and damages.

WHEREFORE, Plaintiff demands judgment against Aventis in an amount to be determined, with interest, costs, attorney's fees, compensatory damages, punitive damage, and any other relief this court deems appropriate.

## COUNT V
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

67.     Plaintiff herein repeats and incorporates by reference the allegations contained in Paragraphs 1 through 66 of the Complaint as if separately set forth herein.

68.     Aventis has breached the implied covenant of good faith and fair dealing, which existed with Plaintiff in connection with the contract of employment.

69.     Plaintiff has suffered and incurred damages as a result of the Aventis' breach of the implied covenant of good faith and fair dealing.

70.     As a direct and approximate result of the acts and/or omissions of Aventis, the Plaintiff suffered a diminution of earning capacity, loss of front pay, loss of back pay, loss of employment, loss of the opportunity for employment benefits, severe emotional distress, post traumatic distress, pain, suffering and other emotional and economic injuries and damages.

71.     Aventis is liable, both jointly and severally, to Plaintiff for all damages caused by their breach of the implied covenant of good faith and fair dealing, plus interest, and costs.

9

WHEREFORE, Plaintiff demands judgment against Aventis in an amount to be determined at trial, with interest, costs, attorney's fees, compensatory damages, punitive damage, and any other relief this court deems appropriate.

## COUNT VI
### (Tortuous Interference With Advantageous and/or Contractual Relations)

72.     Plaintiff herein repeats and incorporates by reference the allegations contained in Paragraphs 1 through 71 of the Complaint as if separately set forth herein.

73.     Ms. Edmunds improperly interfered with Plaintiff's advantageous and/or contractual relations with Aventis.

74.     As a direct and approximate result of the acts and/or omissions of Ms. Edmunds, the Plaintiff suffered a diminution of earning capacity, loss of front pay, loss of back pay, loss of employment, loss of the opportunity for employment benefits, severe emotional distress, post traumatic distress, pain, suffering and other emotional and economic injuries and damages.

WHEREFORE, Plaintiff demands judgment against Ms. Edmunds, in an amount to be determined at trial, with interest, costs, attorney's fees, compensatory damages, punitive damage, and any other relief this court deems appropriate.

## COUNT VII
### (Intentional Interference With Advantageous and/or Contractual Relations)

75.     Plaintiff herein repeats and incorporates by reference the allegations contained in Paragraphs 1 through 74 of the Complaint as if separately set forth herein.

76.     Ms. Edmunds improperly interfered with Plaintiff's advantageous and/or contractual relations with Aventis.

10

77.    As a direct and approximate result of the acts and/or omissions of Ms. Edmunds, the Plaintiff suffered a diminution of earning capacity, loss of front pay, loss of back pay, loss of employment, loss of the opportunity for employment benefits, severe emotional distress, post traumatic distress, pain, suffering and other emotional and economic injuries and damages.

WHEREFORE, Plaintiff demands judgment against Ms. Edmunds in an amount to be determined at trial, with interest, costs, attorney's fees, compensatory damages, punitive damage, and any other relief this court deems appropriate.

### COUNT VIII
### (Violation of Massachusetts Civil Rights)

78.    Plaintiff herein repeats and incorporates by reference the allegations contained in Paragraphs 1 through 77 of the Complaint as if separately set forth herein.

79.    Aventis and/or Ms. Edmunds have interfered and/or attempted to interfere with Plaintiff's rights under the laws and/or constitutions of the United States and/or the Commonwealth of Massachusetts by threats, intimidation and/or coercion.

80.    The conduct of Aventis and/or Ms. Edmunds constitutes a violation of Plaintiff's rights under M.G.L. c. 12 §§ 11I.

81.    As a direct and approximate result of the acts and/or omissions of Aventis and/or Ms. Edmunds, the Plaintiff suffered a diminution of earning capacity, loss of front pay, loss of back pay, loss of employment, loss of the opportunity for employment benefits, severe emotional distress, post traumatic distress, pain, suffering and other emotional and economic injuries and damages.

11

WHEREFORE, Plaintiff demands judgment against the defendants, jointly and severally, in an amount to be determined at trial, with interest, costs, attorney's fees, compensatory damages, punitive damage, and any other relief this court deems appropriate.

## COUNT VII
### (Violation of Federal Civil Rights)

82.     Plaintiff herein repeats and incorporates by reference the allegations contained in Paragraphs 1 through 81 of the Complaint as if separately set forth herein.

83.     Aventis and/or Ms. Edmunds have interfered and/or attempted to interfere with Plaintiff's rights under the laws and/or constitutions of the United States and/or the Commonwealth of Massachusetts by threats, intimidation and/or coercion.

84.     The conduct of Aventis and/or Ms. Edmunds constitutes a violation of Plaintiff's rights under 42 USC §§ 1983.

85.     As a direct and approximate result of the acts and/or omissions of Aventis and/or Ms. Edmunds, the Plaintiff suffered a diminution of earning capacity, loss of front pay, loss of back pay, loss of employment, loss of the opportunity for employment benefits, severe emotional distress, post traumatic distress, pain, suffering and other emotional and economic injuries and damages.

WHEREFORE, Plaintiff demands judgment against the defendants, jointly and severally, in an amount to be determined at trial, with interest, costs, attorney's fees, compensatory damages, punitive damage, and any other relief this court deems appropriate.

12

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

WILLIAM M. BYRD,

By his attorneys,

Paul K. Flavin
BBO No. 171145
John C. Koslowsky
BBO No. 561616
Flavin & Koslowsky
424 Adams Street
Milton, MA 02186
(617) 698-3000

Dated: February __, 2004
2002-17P

13

**COVER SHEET**

Superior Court Department
County Middlesex

| | |
|---|---|
| PLAINTIFF(S) | DEFENDANT(S) |
| William M. Byrd | Aventis Pharmaceuticals, Inc., et al |
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE (617)698-3000 | ATTORNEY (if known) |
| John C. Koslowsky, Flavin & Koslowsky | |
| 124 Adams Street, Milton, MA   02186 | |
| Board of Bar Overseers number:   561616 | |

## Origin code and track designation

Place an x in one box only:

- [ ] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from Judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| 22 | Employment disirimination (F) | | (X) Yes     ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

Documented medical expenses to date:

1. Total hospital expenses .................................................. $...........
2. Total Doctor expenses .................................................... $...........
3. Total chiropractic expenses ............................................. $...........
4. Total physical therapy expenses ........................................ $...........
5. Total other expenses (describe) ........................................ $...........

Subtotal $...........

Documented lost wages and compensation to date ............................ $...........
Documented property damages to date ...................................... $...........
Reasonably anticipated future medical and hospital expenses ............... $...........
Reasonably anticipated lost wages ........................................ $...........
Other documented items of damages (describe)

$...........

Brief description of plaintiff's injury, including nature and extent of injury (describe)

$...........

TOTAL $...........

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Give a detailed description of claim(s):

Plaintiff was discriminated by defendant, and wrongfully terminated. At the time of his termination, plaintiff was earning in excess of $80,000.00 per year.

TOTAL $. 160,000 ....

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____ DATE: 4/15/04

A.O.S.C.2005-11/99
2000

# EXHIBIT F

**Sales Representative Position**
**Core Competencies**

## Product Knowledge
- Has a thorough knowledge and understanding of the fields of therapy for all promoted products.
- Knows the MOA and hemodynamic effects of key competitors in order to effectively compare and contrast with promoted products.
- Has a thorough knowledge and understanding of clinical trials and uses appropriately as proof sources.
- Takes initiative to learn new technical and competitive information and selling strategies.
- Presents technical information in a conversational manner.

## Selling Skills
- Incorporates Systematic Selling Dialog skills throughout all selling activities.
- Has ability to respond to cues of the customer.
- Is persistent, creative, and resourceful when approaching negotiating/selling situations.
- Is able to resolve conflict so that all parties win by using strong negotiation and problem solving skills.
- Ability to identify key decision makers
- Achieves mutually beneficial results in strategic and business development.

## Interpersonal Skills
- Treats people with dignity and respect.
- Develops reputation as being credible, reliable, and trustworthy.
- Builds rapport through cultivating relationships with people.
- Earns respect of customers, peers, competitors, and management.
- Exhibits appropriate sensitivity to feelings of others.
- Listens effectively.
- Is flexible and adapts to company and industry changes.

## Territory Management
- Coordinates and utilizes resources toward fulfillment of desired objectives.
- Understands and acts upon current issues within the marketplace relative to managed care, pharmaceutical industry, and national health care trends.
- Possesses knowledge of the institutional influence within territory.
- Takes initiative to understand potential opportunities and changes within the marketplace.
- Builds and develops advocates.

## Targeting/Analysis
- Able to identify targeted customers through the use of DSS.
- Knows their competition and respective products, tactics and marketing strategies.
- Balances analysis and the resulting action plans
- Maintains TIM certification
- Knowledge of territory performance and promoted products
- Knowledge of computer analysis and application.
- Call activity
- Sales results by product



## Teamwork

- Is committed to a team approach.
- Understands and participates as a member of assigned teams. Appreciates the benefits and opportunities teamwork brings to the business.
- Effectively carries out assignments/duties/responsibilities assigned as a team member.
- Demonstrates appropriate interaction across Field, Institutional, Professional Education, and Account Management teams.
- Communicates with sales associates and management.

## Planning and Organizing

- Effectively utilizes Strategic Performance Planning to establish personal development and business goals.
- Plans, organizes, and monitors activities according to priorities.
- Establishes and meets schedules, deadlines and goals.
- Administration and reporting is accurate and timely.
- Focuses selling efforts, sample distribution, and budgetary allotment accordingly.

## Leadership

- Maintains high standards for self.
- Demonstrates appropriate judgment in the face of ambiguity and change.
- Is professional in image and behavior; a role model.
- Is able to achieve results through others without line authority.

# EXHIBIT G

# Aventis Pharmaceuticals Corporate Policy Manual

## 104 - Associate Coaching and Counseling



Policy Number: 104
Effective: 04/15/99

### SCOPE

This policy describes Aventis Pharmaceuticals' approach to enhancing performance and to managing performance problems. All USA-based supervisors are expected to use this approach.

### GENERAL POLICY

Aventis Pharmaceuticals envisions a working environment which provides each associate an opportunity to learn, grow and make a worthwhile contribution that is mutually rewarding to the Company and the associate. Every associate has the right to know what is expected of him/her and where he/she stands in relation to that expectation. An integral part of this goal is a consistent system for constructive associate coaching and counseling which utilizes the full training potential in any situation.

Associate coaching and counseling will normally take one of two forms:

1. Coaching provides an opportunity for every associate to perform at his/her highest level of capacity with ever-increasing skills to achieve improved results in the future, or
2. Counseling (performance problem oriented) ensures that each associate is made aware of failure to meet standards of performance which have been previously communicated and to provide an opportunity, where appropriate, for the associate to subsequently meet those standards for continued employment.

**NOTE: "Performance" as encompassed by this policy may include both individual achievement against goals and standards of behavior.**

### COACHING

Aventis Pharmaceuticals' performance management systems rely on managers, teams, and associates to:

1. Mutually set goals and objectives
2. Periodically review progress
3. Annually meet to discuss accomplishments and results achieved

Performance coaching is that aspect of performance management that occurs on a day-to-day basis **during** the performance period to help the associate achieve the highest possible results. The

coaching process places the supervisor in a supportive role rather than a judgmental role, and increases the probability of success for the associate and the supervisor. The supervisor's primary responsibilities in the Aventis Pharmaceuticals coaching process are outlined in the following paragraphs:

1. **Define Standards of Performance in Terms of Results Expected**

   The supervisor's first responsibility is to assure a complete understanding by the associate of the results, i.e., goals, expected in each job assignment. Although such expected performance levels or goals are normally developed jointly with the associate, it is the supervisor's responsibility to finally determine and approve them and to assure that these mutually agreed upon measures are consistent with the needs of the department, division, or team. These results should be clearly defined in measurable terms. The supervisor can usually be assured that these job expectations will be understood and measurable if they are reduced to writing and include specific statements of quantity, quality, cost, and time parameters for each result area.

2. **Provide Timely Knowledge of Performance**

   Ideally the supervisor, the self-managed work team, when appropriate, and the associate, will engage in regular and ongoing dialogue regarding all aspects of work performance. In addition, the supervisor and associate are encouraged to establish dates during the performance period at which time they will review the associate's progress. In these informal sessions the associate and supervisor should provide feedback to each other regarding their interpretation of performance to date. This feedback must be candid and thorough if it is to have any impact on the end results. At this time the associate and supervisor can review any problems or additional information either person has learned about the assignment which may be obstacles to successful achievement of results.

3. **Provide Assistance When Needed**

   The supervisor should be prepared to provide assistance to the associate whenever expectations are not being met or other information indicates assistance is needed. Such assistance will normally be required in one of two areas: **First,** when the associate lacks sufficient skills or knowledge to perform the task at hand, or **second,** when the associate needs assistance in overcoming or working around obstacles to secure necessary results.

   The key to effective coaching is relevant, helpful, and timely feedback. The process works well when the supervisor strives to create a climate in which the associate will feel free to ask for assistance. In order to create that climate the supervisor needs to be available and make it easy for the associate to ask for assistance when it is needed.

4. **Reward Based on Results**

   Aventis Pharmaceuticals links pay to performance. The supervisor should clearly and candidly outline for the associate how the results achieved by the associate, the business unit or team, and the company as a whole affect the various rewards available.

# JOB PERFORMANCE

Standards of performance and quality are high at Aventis Pharmaceuticals. From time to time individuals may fail to perform or achieve agreed-upon results. While such failure may lead to learning and improvement, continued failure to meet standards of performance requires corrective action on the part of the supervisor and the associate. Where continued failure to meet standards occurs despite coaching, a progressive counseling process may be initiated. (See Counseling section.) In some situations, counseling may not be appropriate and termination of employment may be immediate. (See Termination section.)

## COUNSELING

When progressive discipline is selected, it is envisioned that success may occur at any time in the process, and the purpose of coaching and counseling is to give the employment relationship every chance to succeed. An individual review of each situation based on the case history shall be conducted to determine what is the most appropriate level of counseling and to develop an effective plan for measuring progress. Incidents or behavior may arise that warrant counseling at varying levels or of varying degrees. The steps or levels of counseling that may be utilized are:

1. **Verbal Warning**

   **Intent:** It is the responsibility of the supervisor to inform the associate of any failure to meet standards of performance as soon as this failure is recognized.

   **Supervisory Steps:** In this first formal alert, the supervisor should:
   A. Clearly describe the issue for the associate.
   B. State the specific action required to achieve and sustain a satisfactory level of performance.
   C. Spell out the consequences of continued poor performance or inappropriate behavior.
   D. Make a statement of his/her confidence that the associate will correct the deficiencies.
   E. Document the conversation with a summary for his/her own working file.

   **NOTE:** No record will appear in the associate's permanent file unless further problems arise. This procedure provides a strong incentive for improvement.

2. **The First Written Warning**

   **Intent:** If the problem reoccurs, other problems develop, or the initial problem is serious enough to bypass a verbal warning, the supervisor should review the facts with the next level manager and the appropriate Human Resources representative to determine if the associate should be given a written warning. The written warning becomes a part of the associate's permanent personnel file. The "original" written warning document should be forwarded to the custodian of personnel files in Human Resources.

   **Supervisory Steps:** The supervisor should:
   A. Talk with the associate, review the past performance discussion, if any, and identify the issue and clarify the reason for the written warning.
   B. Communicate the desired behavior or expectation (often in the form of a performance improvement plan which sets forth specific measurable criteria of performance that must be improved.)

    C.  Commit to work with and support the associate (but counsel the associate on their own primary responsibility to carry out any action plan that has been outlined and turn the situation around.)

    D.  State that continued failure by the associate to meet performance standards may result in further disciplinary action, up to and including termination.

    E.  Make note of the Personal Assistance Program being available as an additional resource to the associate.

    F.  Inform the associate of the availability of Aventis Pharmaceuticals' 102 - Problem Solving Policy and Process.

    G.  Review the progress in deficient areas on a periodic basis.

### 3.  Final Written Warning

**Intent:** If, in the supervisor's judgment, the associate continues to fail to meet the required standards of performance, or if the initial problem is serious enough to warrant bypassing one or both of the preceding steps, the supervisor and the Human Resources representative prepare a case history and initiate a review process to determine whether a final written warning is appropriate. The review process shall include concurrence of the next level manager, the most senior manager in that function, Human Resources management and Corporate Counsel.

**Supervisory Steps:** If a final written warning is given, the supervisor shall follow each of the set steps for written warnings and emphasize to the associate the probability of termination if failure to meet performance standards continues.

### 4.  Termination

If, in the supervisor's judgment, the associate continues to fail to meet the required standards of performance or if the problem is serious enough to warrant immediate discharge, the supervisor and the Human Resources representative shall prepare a case history and initiate a process to review the recommended termination. Any termination requires the prior approval and concurrence of the next level manager, the most senior manager in that function, Human Resources management and Corporate Counsel. If the review process results in a decision to terminate the associate, the supervisor shall coordinate termination procedures with his/her assigned Human Resources representative.

### 5.  Suspension - Pending Investigation or Action

The supervisor may suspend an associate to facilitate a "cooling down period" or for further investigation.

Should a violation occur for which discharge appears appropriate at a time when any of the essential decision-makers are not present or are unable to be consulted (next level manager, the most senior manager in that function, Human Resources management or Corporate Counsel), the supervisor at his/her own discretion may suspend the associate by sending him/her home immediately. The associate will then be notified when to report for resolution of the matter. The suspension normally will be with regular pay. Any exception to a suspension with pay requires approval by Human Resources management.

## CONCLUSION

Counseling is successful if the associate is able to achieve improved performance, as reflected in subsequent performance appraisals, without the need for any further disciplinary steps. There are no time limits for disciplinary actions; warning letters and counseling sessions do not lapse and are not removed from associate personnel files. On the other hand, a supervisor should note progress and improved performance. If subsequent repeat or other performance issues arise, the individual review of the situation to determine what is the most appropriate level and method of counseling will include consideration of past performance issues and progress or improved performance.

The procedures outlined in this coaching and counseling policy are provided as general guidance to supervisors when dealing with job performance issues. Employment remains at will, and this policy does **not** create a contractual right of any associate to be employed or to review the disciplinary or discharge procedures applied in a particular case.



**Business Restricted - Not to be shared outside Aventis**
*Last Update:* 04/17/00
*Web Author:* Brian Jackson

EXHIBIT H

# FIELD SALES REPRESENTATIVE MID-YEAR PERFORMANCE PLAN ASSESSMENT

Associate Name: __Bill Byrd_____     Date:_8/5/99_____

Time in this Position:_2 years 3 months   Evaluation Period:__1/99 – 7/99_____
                      (month/year)                          (mo/yr to mo/yr)

## Core Competency - PRODUCT KNOWLEDGE

- Has a thorough knowledge and understanding of the fields of therapy for all promoted products.
- Knows the MOA and hemodynamic effects of key competitors in order to effectively compare and contrast with promoted products.
- Has a thorough knowledge and understanding of clinical trials and uses appropriately as a proof sources.
- Takes initiative to learn new technical and competitive information and selling strategies.
- Presents technical information in a conversational manner.

| COMMENTS | Mastery 4 | High 3 | Moderate 2 | Basic 1 | Below Basic Expectations 0 |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

### Associate Assessment:

Very good understanding of my products Allegra and Amaryl. I can transfer technical knowledge to easy to understand sales message (nephrology renal impairment). I have a good understanding of my clinicals for both products (Allegra and Amaryl). All recent certification test scores greater than 90%.

### Manager Assessment/Comments:

I observed basic product knowledge during the quad meeting and at the national meeting during the Allegra board game.

Bill scored a 96% on the Allegra QD/Pediatric/Urticaria test.

Bill states that he uses clinicals on an as needed basis.

He talked with a Lilly representative about the new competitor Avandia and found a study with Rezulin and Amaryl combination

From my field visit observations, Bill presents technical information in a conversational manner.

Opportunity: Continue to improve knowledge on clinicals and PI. Bill will meet/talk monthly with his peers (such as Mike Thibault and Dave Pearlstein) to enhance his product knowledge.

Rating: 2.0

EXHIBIT
#4
10-18-04
BYRD

L:\kendata\kendoc\spp\srreview.doc
50016118

1

DEF00538

Core Competency - SELLING SKILLS
- Incorporates Systematic Selling Dialog skills throughout all selling activities.
- Has ability to respond to cues of the customer.
- Is persistent, creative, and resourceful when approaching negotiating/selling situations.
- Is able to resolve conflict so that all parties win by using strong negotiation and problem solving skills.
- Ability to identify key decision makers.
- Achieves mutually beneficial results in strategic and business development.

| COMMENTS | Mastery 4 | High 3 | Moderate 2 | Basic 1 | Below Basic Expectations 0 |
|---|---|---|---|---|---|
| | | | | | |

Associate Assessment:

Manager Assessment/Comments:



Core Competency - INTERPERSONAL SKILLS
- Treats people with dignity and respect.
- Develops reputation as being credible, reliable, and trustworthy.
- Builds rapport through cultivating relationships with people.
- Earns respect of customers, peers, and competitors, and management.
- Exhibits appropriate sensitivity to feelings of others.
- Listens effectively.
- Is flexible and adapts to company and industry changes.

| COMMENTS | Mastery 4 | High 3 | Moderate 2 | Basic 1 | Below Basic Expectations 0 |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

Associate Assessment:

Very good interpersonal skills. I helped to get Allegra on the Jordan Hospital formulary. A strong relationship with key customer personnel. Ex: New Bedford Medical Associates (Dr Denoyers), Hawthorne (Dr Altschuler) and Coastal Medical (Dr. Potts). Good communication skills.

Manager Assessment/Comments:

Bill treats people with dignity and respect.

From my observations, Bill has built a strong rapport with many offices in the territory.

Bill has acted upon developing answers to customer cues by putting himself in a better hearing situation.

Opportunity: Develop Dr Miller, Sklarew, Cavanaugh and Accetta as Allegra advocates. Dr Farah, Coughlin, Coakley, Reddy as Amaryl advocates and speakers.

Rating: 3.0



## Core Competency - TERRITORY MANAGEMENT

- Coordinates and utilizes resources toward fulfillment of desired objectives.
- Understands and acts upon current issues within the marketplace relative to managed care, pharmaceutical industry, and national healthcare trends.
- Possesses knowledge of the institutional influence within territory.
- Takes initiative to understand potential opportunities and changes within the marketplace.
- Builds and develops advocates.

| COMMENTS | Mastery 4 | High 3 | Moderate 2 | Basic 1 | Below Basic Expectations 0 |
|---|---|---|---|---|---|
| | | | | | |

Associate Assessment:

Manager Assessment/Comments:

DEF00541

4



CONFIDENTIAL

## Core Competency - TARGETING/ANALYSIS

- Able to identify targeted customers through the use of DSS.
- Knows their competition and respective products, tactics and marketing strategies.
- Balances analysis and the resulting action plans.
- Maintains TIM certification.
- Knowledge of territory performance and promoted products.
- Knowledge of computer analysis and application.
- Call Activity
- Sales Results by product

| COMMENTS | Mastery 4 | High 3 | Moderate 2 | Basic 1 | Below Basic Expectations 0 |
|----------|-----------|--------|------------|---------|----------------------------|
|          |           |        |            |         |                            |

Associate Assessment:

Manager Assessment/Comments:

CONFIDENTIAL

**Core Competency - TEAMWORK**
- Is committed to team approach.
- Understands and participates as a member of assigned teams. Appreciates the benefits and opportunities teamwork brings to the business.
- Effectively carries out assignments/duties/responsibilities assigned as a team member.
- Demonstrates appropriate interaction across Field, Institutional, Professional Education, and Account Management teams.
- Communicates with sales associates and management.

| COMMENTS | Mastery 4 | High 3 | Moderate 2 | Basic 1 | Below Basic Expectations 0 |
|---|---|---|---|---|---|
| | | | | | |

<u>Associate Assessment:</u>

<u>Manager Assessment/Comments:</u>



**Core Competency - PLANNING AND ORGANIZING**
- Effectively utilizes Strategic Performance Planning to establish personal development and business goals.
- Plans, organizes, and monitors activities according to priorities.
- Establishes and meets schedules, deadlines and goals.
- Administration and reporting is accurate and timely.
- Focuses selling efforts, sample distribution, and budgetary allotment accordingly.

| COMMENTS | Mastery 4 | High 3 | Moderate 2 | Basic 1 | Below Basic Expectations 0 |
|----------|-----------|--------|------------|---------|-----------------------------|
| | | | | | |

**Associate Assessment:**

Effective action plan with teammates – key customers. IPA responsibilities. Uses DSS, CIS and POA with every sales call. Sample reconciliation completed. Developed SPP for territory with quad members.

**Manager Assessment/Comments:**

Bill comes prepared with detailed lists of goals and objectives for his territory during our work sessions.

Bill was 30 minutes late to a quad meeting in his own territory.

Sample variance exceeding $6,000 during the first quarter of 1999, was worked down to $1546 as an explained variance.

Opportunity: Reconcile monthly to avoid sample variances.

Rating: 2.5

DEF00544

CONFIDENTIAL

**Core Competency - LEADERSHIP**
- Maintains high standards for self.
- Demonstrates appropriate judgment in the face of ambiguity and change.
- Is professional in image and behavior, a role model.
- Is able to achieve results through others without line authority.

| COMMENTS | Mastery 4 | High 3 | Moderate 2 | Basic 1 | Below Basic Expectations 0 |
|----------|-----------|--------|------------|---------|----------------------------|
|          |           |        |            |         |                            |

<u>Associate Assessment:</u>

<u>Manager Assessment/Comments:</u>

_____     _____     _____     _____
Associate                   Date        District Manager             Date

DEF00545