# EXHIBIT P



January 18, 2002

Meeting with Bill to discuss his final written warning

Bill was asked what his has done to address the requirement; his answer was that" he had increased his communication with manager, Deb Edmunds".

Chris asked Bill what his perception of the written warning was and his reply was "he was not communicating enough with his manager". Bill does not embrace the warning as a core competency required.

Call Activity

Admitted he was wrong and discussed the reality vs. requirement, he states that he cannot complete two sales calls in a day so he justifies his numbers in order to make his numbers - that to him is reality vs. requirement.

He also admitted putting in his secondary and primary calls but did not detail them. He admitted he was wrong. The doctors he admitted to were Dr. Malaquies, Golden and Bizinkauskas.

Expense Reports

$65.00 he gave to charity. Deb asked him to explain this because it was to a vice president of a health center, not even a physician, who asked for the toys for needy kids. Bill at a different occasion donated his own money and did not expense it. Bill had no explanation for this. Deb then asked if he had read and understood the guidelinesfor charitable donations and he said, "no, I thought it would be o.k."

$1,100.00 on lunch expense for 4 doctors. When asked he said there were 6 attendees but he only put down 4 because he did not count himself and the celebrity golfer. His receipts for the day were $1036 and he expensed $1100 on his expense report. He could not explain the discrepancies of the $64. Bill also claimed to have gotten approval for this golf program from Deb, but he only would had received approval if he stayed within the $75 for diner per person and $100 for golf. This program was still over guidelines. He also admitted expensing this program as a lunch instead of golf. Bill put down this program as a hospital display round table. When asked why he didn't explain the expense as golf, he answered his previous manager said he could expense it as a roundtable. Bill's current RD and current manager told him in a previous meeting he could not expense golf as a roundtable and to put it down as golf. He claimed not to recall this conversation.

DEF00589

Bill said when discussing the guidelines and general lacking of compliance he states, "I am not maliciously or intentionally doing this". Chris asked Bill if he would call this intentional if it had been going on the last year and half and he has been told numerous times of expectations and he still does not comply. He replied "yes"

When asked if he was in our shoes what would he do, he replied, "He would not accept this behavior". He then asked for one more chance.

He wanted to know the outcome and admitted he did not deserve another chance. Chris informed Bill that she would get back to him soon, because we value people and would not do that.

DEF00590

# EXHIBIT Q

## Travel & Expense Account
## Transmittal Sheet



10547 060901 001240.44



## MAIL RECEIPTS TO

ATTN: Expense & Travel Accounting
Hoechst Marion Roussel, Inc. P
.O. Box 9790            K
ansas City, MO 64134-9915   E
**Internal Address**
xpense & Travel K1-M0710

Employee name: Byrd, Bill PH/US
Associate #: 10547
Expense dates: 06/03/01-06/09/01
Total expense: 1240.44
Amount due Employee: 140.44

Reference #: 10547 060901 1240.44

## DIRECTIONS FOR SUBMISSION

1. Mail the following original receipts, and other appropriate documentation with this page.

   | Date | Expense Item | Amount | If not submitted - Explain |
   |------|--------------|--------|----------------------------|
   | 1) 06/06 | Lunch | 140.44 | |
   | 2) 06/08 | Lunch | 1100.00 | |
   | 3) 06/06 | Grp sales-attendees | 0.00 | |
   | 4) 06/08 | Grp sales-attendees | 0.00 | |

   * * * Do NOT attach receipts which are not listed above * * *



EXHIBIT #22 10-18-04 BYRD

2. Do NOT attach unused (partially or wholly) airline tickets. Return ALL unused tickets to your travel agency.

3. Unless your approver has directed otherwise, place this transmittal and receipts into an envelope and address exactly as shown above.

Ref: 10547 060901 1240.44                    Page 1                    DEF00143                    Printed on 06/10/0

# Travel & Expense Account
## Summary & Detail


CONFIDENTIAL

| | |
|---|---|
| Associate Name | Byrd, Bill PH/US |
| Associate # | 10547 |
| Dates | 06/03/01-06/09/01 |
| Purpose | General Selling Expenses |

| | |
|---|---|
| Total Expenses | 1240.4 |
| Company Issued cash advances- | 0.0 |
| Expenses directly billed to Co.- | 0.0 |
| Amount due Employee= | 1240.4 |
| Amount applied to charge card- | 1100.0 |
| Net due Employee= | 140.4 |

Approved by (as required): _____

NOTE: (c)=Charged Credit Card, (d)=Directly billed to company

| Dates / Purpose | Sun 6/3 Gener... | Mon 6/4 Gener... | Tue 6/5 Gener... | Wed 6/6 Gener... | Wed 6/6 Group... | Thu 6/7 Gener... | Fri 6/8 Gener... | Fri 6/8 Group... | Sat 6/9 Gener... | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lunch | | | | | 140.44 =d+c | | | (c) 1100.00 =A+b? | | | 1240.4 |
| TOTALS $ | | | | | 140.44 | | | 1100.00 | | | 1240.4 |

## Expense Business Purpose

| Date | Purpose | |
|---|---|---|
| 6/3/01 | General Selling Expenses | |
| 6/4/01 | General Selling Expenses | |
| 6/5/01 | General Selling Expenses | |
| 6/6/01 | General Selling Expenses | |
| 6/7/01 | General Selling Expenses | |
| 6/8/01 | General Selling Expenses | |
| 6/9/01 | General Selling Expenses | |
| | Group Selling | |
| | Group Selling | |

## General Trip Items

| Item | Comment |
|---|---|
| Group Selling | Date:6/6 Product(Misc./Other) Expense(ROUNDTABLE) Project(Hospital, Institutio) Speaker(Bill Byrd) Topic(Diabetes) Explain(Insulin) Facility(Hawthorn edical) Professional An.(7) Other An.(19) CME Hrs(No) |
| Group Selling | Date:6/8 Product(Misc./Other) Expense(ROUNDTABLE) Project(Hospital, Institutio) Speaker(Bill Byrd) Topic(Diabetes) Explain(Insulin,Lantus) Facility(Dr Mackler) Professional An.(4) Other An.(0) CME Hrs(No) |
| Travel Agency | Moritz - Approved Agency(YES) |
| Company Car | Miles End(12323) - Start(11695) - Personal(7) = Business(621) |
| Profile Information | Territory(B1CE) |

## Comments

| Subject | Comment |
|---|---|
| Lunch-Wed, Jun 6 | Lantus, Dr.s Henderson,Pearl,Sawyer,Galbraight,and asso |
| Lunch-Thu, Jun 7 | Lantus,Dr S.Mackler,E.Mackler,Brown,Caplan |

DEF00144

ef: 10547 060901 1240.44     Page 2     Printed on 06/10/

(A) CONFIDENTIAL

SANDY BURR COUNTRY CLUB
103 COCHITUATE RD
WAYLAND, MA 01778

TRAN TYPE **SALE**
#xxxxxxxxxxxx2002
CARD TYPE **AMEX**
SEQ # 003
TICKET # 000001305
AUTH CODE **560502**

TOTAL          $36.00

CUSTOMER COPY

---

SANDY BURR COUNTRY CLUB
103 COCHITUATE RD
WAYLAND, MA 01778

TIME 2:54 PM   DATE 06/08/01
TRAN TYPE **SALE**
#xxxxxxxxxxxx2002
CARD TYPE **AMEX**
SEQ # 009
TICKET # 000001405
AUTH CODE **576612**

TOTAL          $1000.00

CUSTOMER COPY

---

(C)   80756

0979412862
I PARTY #30
86 N. DARTMOUTH MALL, RT 6
NO. DARTMOUTH, MA 02747
617-223-0822

MERCHANT 0101 310970412862 002
JUNE 06, 2001  11:05AM

BATCH # : 157001       REF # : 094
ACCT # : 378531199782002
TYPE   : AMER EXP           06/02
AUTH # : 503502

SALE            $   14.54

I AGREE TO PAY THE ABOVE TOTAL AMOUNT
ACCORDING TO THE CARD ISSUER AGREEMENT
(MERCHANT AGREEMENT IF CREDIT VOUCHER)

X William Byrd
   JM BYRD

DEF00145

CONFIDENTIAL

```
                    Stop & Shop Savings
                    Price with...
BR 3 POTATO SLD
                    Stop & Shop Savings
                    Price...
HK CHSE...
FRSH CT MELN
S&S FORKS
S&S FORKS
SS SRVNG SPTL PK                    0.99
M.G DECOR NPKINS
DIX PLS PRTY CUP                    2.69
FNGR SNDWCH BFET                   25.99
WRAP PLATTER                       21.99
SPRITE 12PK CANS                    3.99
BOTTLE DEPOSIT                      0.60
DIET COKE 12PK                      3.99
BOTTLE DEPOSIT                      0.60
          2 for $4.00
PLND SPRNG 6PK                      2.00
COKE CLASC 12 PK                    3.99
BOTTLE DEPOSIT                      0.60
WRAP PLATTER                       21.99
                       Total      $125.90
Void Customer Number    1043111424
Customer Card Number    1099900001
                       Total      $125.90
        Cash                      $200.00
        Total before savings      $126.66
        Your Total Savings          $1.35
        Total after savings       $125.31
        Tax paid                    $0.59
        Total                     $125.90
        Total tender              $200.00
        Change                     $74.10

        OUR SAVINGS SUMMARY
Stop & Shop Card Savings            $1.35
Total Stop & Shop Card Saving       $1.35
Your Total Savings                  $1.35
************************

THANK YOU FOR SHOPPING AT STOP & SHOP
WE ENJOYED SERVING YOU AND WE
LOOK FORWARD TO SERVING ALL YOUR
FUTURE SHOPPING NEEDS
```

DEF00146



# EXHIBIT R

**The Commonwealth of Massachusetts**
**Commission Against Discrimination**
One Ashburton Place, Boston, MA 02108
Phone: (617) 994-6000  Fax: (617) 994-6024

| | |
|---|---|
| MCAD DOCKET NUMBER: 02BEM03248 | EEOC/HUD CHARGE NUMBER: 16CA203288 |
| FILING DATE: 08/02/02 | VIOLATION DATE: 02/04/02 |

Name of Aggrieved Person or Organization:
William M. Byrd
38 Meadowview Road
Milton, MA 02186
Primary Phone: (617)698-7254 ext. ____

Named is the employer, labor organization, employment agency, or state/local government agency who discriminated against me:
Aventis Pharmaceuticals, Inc.
HUMAN RESOURCE DEPT.
230 Third Ave.
Waltham, MA 02451
Primary Phone: (781)895-3500 ext. ____

No. of Employees:    25+

Work Location: Waltham

Cause of Discrimination based on:
Age, Age of Complainant, specified; Race, Color, Race, Color; Race, Color, Black (Non-Hispanic).

The particulars are:
I, William M. Byrd, the Complainant believe that I was discriminated against by Aventis Pharmaceuticals, Inc., on the basis of Age, Race, Color, Race, Color. This is in violation of M.G.L. 151B Section 4 Paragraph 1,1B and .

PLEASE SEE ATTACHED.

I swear or affirm that I have read this complaint and that it is true to the best of my knowledge, information and belief.

(Signature of Complainant)

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS DAY of 10/8/2002.

NOTARY PUBLIC: _____

SIGNATURE NOTARY PUBLIC: _____
MY COMMISSION EXPIRES: _____

EXHIBIT #17
10-18-04
BYRD

MCAD Docket Number 02BEM03248, Complaint

# CHARGE OF DISCRIMINATION

*Form is affected by the Privacy Act of 1974; see Privacy Act Statement on reverse before completing this form.*

| ENTER CHARGE NUMBER |
|---|
| ☐ FEPA |
| ☐ EEOC |

**MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION** _____ and EEOC
(State or local Agency, if any)

**NAME** (Indicate Mr., Ms., or Mrs.): Mr. William M. Byrd

**STREET ADDRESS:** 38 Meadowview Road, Milton, MA 02186

**HOME TELEPHONE NO.** (Include Area Code): (617) 698-7254

**COUNTY:** Norfolk

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

**NAME:** Aventis Pharmaceuticals, Inc.

**NO. OF EMPLOYEES/MEMBERS:** Est. 60,000

**TELEPHONE NUMBER** (Include Area Code): (781) 895-3500

**STREET ADDRESS:** 230 Third Avenue, Waltham, MA 02451

**CAUSE OF DISCRIMINATION BASED ON** (Check appropriate box(es)):
☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ AGE    ☒ RETALIATION                  ☐ OTHER (Specify)

**DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE** (Month, day, year): 2/4/02

**THE PARTICULARS ARE** (If additional space is needed, attached extra sheet(s)):

See Appendix A attached hereto and incorporated herein.

RECEIVED AUG 02 2002 COMMISSION AGAINST DISCRIMINATION

I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

_(signature)_ Charging Party (Signature)

**NOTARY** - (When necessary to meet State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT _(signature)_

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) 8/2/02

FORM 5 MAR 84   PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE AND MUST NOT BE USED

APPENDIX "A"

1. I am 53 years old (d/o/b: 10/29/48), and I am an African American. I was hired as a sales representative by Aventis Pharmaceuticals, Inc. (hereinafter "The Company") on May 12, 1997. At the time, I had significant experience as a sales representative in the pharmaceutical industry.

2. I was always considered a reliable and hardworking employee. During my employment with The Company, I met substantially all of my sales quotas. I also had a good relationship with the doctors that I interacted with about my products.

3. During my employment, on or about June or July 1999, Debra Edmunds was hired as my direct supervisor. Shortly after being hired by the company, Ms. Edmunds went out on maternity leave. Thereafter, upon returning from maternity leave, Ms. Edmunds began making derogatory comments about my job performance, and often reprimanded me in front of my co-workers. In addition, Ms. Edmunds treated me differently from my co-workers. For example, if a co-worker mispronounced the name of a product, she would laugh at the mispronunciation and make a joke about it. However, if I mispronounced the name of a competitors' product, I would be chastised by Ms. Edmunds in front of my co-workers and informed that I need to be able to properly pronounce the names of our competitors' products.

4. Also, shortly after returning from maternity leave, Ms. Edmunds engaged in a campaign to gather information against me to establish a paper trail in order to terminate me. Ms. Edmunds did not put the other sales representatives that she supervised under the same scrutiny she did me.

5. Of the 8 or 9 employees that made up my sales group that was supervised by Ms. Edmunds, there were only three (3) employees over 40 years old and the rest were

*[handwritten: 3 males wen TO 3females wk 40]*

in there 20's and 30's. I have noted that within The Company, including with Ms. Edmunds, a strong tendency to hire and retain young female sale representatives to represent The Company.

6. On November 14, 2000, Ms. Edmunds provided me with a written warning in which she outlined aspects of my performance that she claimed were below the expectations of The Company. The items identified by Ms. Edmunds were inaccurate or minor in nature and not strictly followed by other employees in The Company.

7. After receiving my written warning, I met with Ms. Edmunds to explain that I was in compliance with some of the items she listed; that I had a reasonable explanation for some of the other items she listed; and that I wanted to work with her to improve my performance. Ms. Edmunds seemed disinterested in my explanations and my request for future assistance. Consequently, I sought to raise my level of performance to meet the purported level of expectations of The Company without any feedback from Ms. Edmunds.

8. Notwithstanding, I am aware of several sales representatives that presently work for The Company, who do not comply with the same items that Ms. Edmunds identified in my case as being below the expectations of The Company.

9. Shortly after receiving my first warning, I met with Christine List and Ms. Edmunds to voice my concern about being treated differently than other employees by Ms. Edmunds and the fact that Ms. Edmunds seems to favor younger women when hiring new sale representatives for The Company. At the time, Ms. Edmunds was interviewing for the hiring of a new sale representative for The Company. Subsequent to our meeting with Ms. List, Ms. Edmunds hired her first male employee.

10. On September 5, 2001, Ms. Edmunds provided me with a final written warning in which she outlined aspects of my performance that she claimed were still below expectations, along with some new items. Again, the items identified by Ms. Edmunds were inaccurate or minor in nature and not strictly followed by other employees of The Company. After receiving this written warning, The Company stopped paying me the commissions/bonuses that I had already earned.

11. At no time between my receipt of the first written warning and the final written warning did Ms. Edmunds inform me that any aspect of my performance had not been raised to meet the expectations of The Company. In fact, the final written warning acknowledged that I raised my performance with some of the items claimed by Ms. Edmunds as being below the expectations of The Company.

12. After receiving the final written notice, I met with Ms. Edmunds to discuss working with her to improve my performance level to her satisfaction so that I could receive my commissions/bonus. Ms. Edmunds informed me that I would be on final written notice for the remainder of my employment with The Company. Again, Ms. Edmunds was disinterested in working with me to raise my performance level to The Company's or her satisfaction or to accept any reasonable explanations for the minor items raised in the final written warning. Clearly, Ms. Edmunds wanted to terminate my employment with The Company.

13. On February 4, 2002, my employment with The Company was terminated by Christine List. Ms. List informed me that I was terminated because of the minor infractions of The Company's policy.

14. At the time I was terminated, of the estimated 350 sales representatives employed by The Company in the New England area, there was only one (1) other

African American sales representative, and there were no other African American sales representatives over the age of 40.

15. The items identified by Ms. Edmunds as my failure to meet the expectations of The Company were inaccurate or minor in nature and not strictly followed by other employees in The Company. Also, as acknowledged by Ms. Edmunds, I made a conscious effort to comply with all the items listed by Ms. Edmunds despite the fact that other employees were not complying with the same purported policies of The Company. Other than the written warnings, not once did Ms. Edmunds or anyone else with the Company inform me that I had failed to raise my performance level to an acceptable level with The Company in compliance with the written warnings.

16. I was terminated because of my age, color, gender and/or race in violation of state and federal laws.

2002-17P