UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM M. BYRD,<br><br>      Plaintiff,<br><br>v.<br><br>AVENTIS PHARMACEUTICALS, INC.<br>and DEBRA EDMUNDS,<br><br>      Defendants. | Civil Action No. 04-11032-DPW |

## AFFIDAVIT OF MARCIA BOLAND

I, Marcia Boland, having been duly sworn, under oath, do depose and say as follows:

1. I was formerly employed by Aventis Pharmaceuticals, Inc. ("Adventis") as a sales representative from approximately _1991-2004_____ until I voluntarily left my employment on or about _9/30/2005_____. During my employment at Aventis, I had occasion to observe Bill Byrd's performance as a pod mate and co-worker functioning in the same capacity as a sales representative for the pharmaceutical company, Adventis.

2. During the time I worked with William Byrd, he demonstrated a good work ethic, was an intrical part of his sales pod, and his product knowledge was very good. Bill was well qualified, and maintained good relationships with doctors, his managers, and co-workers.

3. I am familiar with Bills product knowledge as I am aware that all sales representatives are required to pass product tests with a high percentage score, and I know Bill scored highly.

4. Based on my observations of Adventis' management of Bill's employment from approximately 2000 through his termination, administrative policies were selectively enforced against Bill for issues common to many sale representatives. Bill was singled out for particularly excessive scrutiny in regard to several administrative matters.

5. I am aware that Bill was accused of falsifying expense reports by identifying a golf outing as a "roundtable". Adventis was aware of this golf outing as a promotional tool as I and another sales representative, who has since been promoted, also participated. In my experience, this golf outing, which involved breakfast, lunch, dinner and accompanying discussions with participating doctors would constitute a description as a "roundtable" on an expense report.

6. At the time Bill's manager, Deb Edmonds, began to strictly enforce administrative policies against Bill and find fault with his performance, Bill was a high producing sales representative whose numbers were excellent and who was well received by and considered very knowledgeable amongst the doctors in his territory. As a pod mate, I would call on the same doctors as Bill.

7. Subsequent to his initial negative review, Bill became a better sales representative and worked very hard to improve on adhering to the policies, which were being selectively enforced against him.

8. I am aware of the assertion that Bill "falsified" an expense report by submitting a request for reimbursement of eleven hundred dollars, when only one thousand thirty six dollars in receipts were submitted. If the reimbursement of the eleven hundred dollars was approved by Bill's manager, Deb Edmunds, normally at Aventis that approval is the end of the expense reimbursement request. Otherwise, the sixty-four dollar amount not evidenced by receipts would have been disallowed. In my experience, subsequent review of a prior approved expense reimbursement is highly unusual.

9. I understand that Bill was criticized for not recording pre and post call notes immediately following the customer call. This was never enforced against any other salesperson. I am aware of many sales representatives that would record their pre and post call notes at the end of the day when they had more time to accomplish the task.

10. Additionally, finding fault with the quality of or identification of a visit as a detail call made by Bill Byrd is also a selectively enforced administrative policy. The running joke among sales representatives is that if you make eye contact with a doctor it constitutes a detailed call. Based on my experience, any sales representatives that spoke to a doctor would note it as detailed call.

11. Moreover, I am unaware of any manager that read or reviewed pod members' call notes with the detailed scrutiny that Deb Edmonds did to Bill Byrd's.

12. I am aware that all members did not supply monthly pod meeting recap notes to all area managers. Once again Deb Edmonds selectively enforced this requirement against Bill Byrd, as opposed to a company wide requirement that was enforced uniformly as to all sales representatives.

13. As to sample variances, these were common and sales representatives were expected to reconcile the variances. It was also common to ask fellow Pod members for additional samples when a sales representative ran out.

14. Another example of selective enforcement of administrative policies is finding issue with not having the doctor sign the electronic devise upon receipt of samples. In that case, a paper form was utilized. It was my experience that the hand held devices were continually on the "fritz", regularly necessitating the use of the paper form signature by many sales representatives.

15. The requirement that sales representatives be in their area each and every business day from 8 am to 5 pm is not routinely enforced. Sales rep is not typically in their sales territory one hundred percent of the time between 8:00 am to 5:00 pm on every business day. Pod mates had a rotation of what doctors they would see on a given day and for the most part, after they made their calls their day was done. Co-workers would get mad at you if you saw a doctor out of rotation, because that effects their ability to meet their quotas.

16. In my opinion, based on my observation and personal experience of 14 years at Aventis, Bill Byrd was singled out and targeted for selective enforcement of administrative policies. Despite his increased efforts to comply and despite the lack of enforcement as to other sales representatives for the same infractions, Adventis management continued to harass Bill Byrd. Even though he attempted stick it out, improve, and do things above and beyond any other sales rep, his dismissal was seemingly inevitable once he was placed under the microscope.

17. If any other sales rep with Aventis was put under the same scrutiny Bill Byrd was put under, because of the supposed violation of administrative policies such as

those set forth in this affidavit, most if not all of the thousands of other sales representatives employed by Aventis would be subject to termination.

    Signed under the pains of penalties of perjury this _28____ day of March 2005.

                                      */s/ Marcia Boland*
                                      Marcia Boland

2002-17P

5