UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM M. BYRD,<br><br>      Plaintiff,<br><br>v.<br><br>AVENTIS PHARMACEUTICALS, INC. and DEBRA EDMUNDS,<br><br>      Defendants. | Civil Action No. 04-11032-DPW |

## DECLARATION OF SAMIA M. KIRMANI

Samia M. Kirmani, on oath, deposes and says as follows:

1. I am an associate with the firm Jackson Lewis, LLP, counsel for the Defendants, Aventis Pharmaceuticals, Inc. and Deborah Edmunds ("Defendants"). I have been involved in the defense of this litigation.

2. On behalf of Defendants, I caused subpoenas *duces tecum* to be served on Plaintiff's former employers, Ross Laboratories (currently known as Abbott Laboratories, Inc.) ("Ross Laboratories"), and Dictaphone Corporation, Inc. ("Dictaphone").

3. In response to Defendants' subpoena *duces tecum*, on or about October 14, 2004 and March 23, 2005, I received records from Lisa Ferrara, Vice President of Human Resources of Dictaphone in response to the subpoena.

4. On or about November 3, 2004, in response to the subpoena, Molly Fisher, Senior Paralegal at Ross Laboratories, sent me records from Plaintiff's personnel file at Ross Laboratories.

5.  In or about November 2004, I telephoned Plaintiff's counsel, Jack Koslowsky, to ask if he would stipulate to the authenticity of documents produced pursuant to subpoenas. On or about November 10, 2004, I received a voicemail from Mr. Koslowsky in which he represented that Plaintiff would not object to the authenticity of the records received from Abbott Laboratories (formerly Ross Laboratories) or from Dictaphone. I caused that voicemail to be transcribed. A true and accurate photocopy of the transcript of that voicemail is attached hereto as Exhibit A.

6.  While he was employed by Ross Laboratories, on or about February 8, 1990, Plaintiff was informed that he failed to pass a product test for a second time and was asked to stop promoting the product at issue. A true and accurate photocopy of a memorandum addressed to Plaintiff and dated February 8, 1990, which was included in the documents received from Ross Laboratories in response to Defendants' subpoena, is attached hereto as Exhibit B.

7.  On or about June 29, 1990, John Boisse, Plaintiff's supervisor at Ross Laboratories, informed Plaintiff that he held Plaintiff responsible for Ross Laboratories' loss of Beverly Hospital as a long-term customer. A true and accurate photocopy of a memorandum dated June 29, 1990 from Mr. Boisse to Plaintiff, which was included in the documents received from Ross Laboratories in response to Defendants' subpoena, is attached hereto as Exhibit C.

8.  Mr. Boisse also prepared a memorandum to a Greg Lindberg at Ross Laboratories dated July 26, 1990, in which Mr. Boisse indicated that he had discussed with Plaintiff Plaintiff's "lack of knowledge as to what had happened at Beverly Hospital" and opined that Plaintiff knew that Mr. Boisse was "not pleased with him." This memorandum also bears a handwritten response from Mr. Lindberg to Mr. Boisse, in which Mr. Lindberg confirmed Plaintiff's negative performance. A true and accurate photocopy of this memorandum and Mr. Lindberg's

handwritten notation, included in the documents received from Ross Laboratories in response to Defendants' subpoena, is attached hereto as Exhibit D.

9. On or about February 13, 1992, Mr. Boisse informed Plaintiff of some performance issues that Mr. Boisse observed while working with Plaintiff and provided Plaintiff with pointed direction with respect to his use of samples, his sales approach, his coverage of all potential doctors, and his product messaging technique. A true and accurate photocopy of a memorandum dated February 13, 1992 from Mr. Boisse to Plaintiff, which was included in the documents received from Ross Laboratories in response to Defendants' subpoena, is attached hereto as Exhibit E.

10. On or about July 15, 1992, Plaintiff received a performance evaluation signed by Mr. Boisse, which discussed Plaintiff's inability to gain rapport with customers. A true and accurate photocopy of an evaluation dated July 15, 1992, which was included in the documents received from Ross Laboratories in response to Defendants' subpoena, is attached hereto as Exhibit F.

11. On or about September 25, 1992, Mr. Boisse reminded Plaintiff again about Ross Laboratories' sampling practices. A true and accurate photocopy a memorandum dated September 25, 1992 from Mr. Boisse to Plaintiff, which was included in the documents received from Ross Laboratories in response to Defendants' subpoena, is attached hereto as Exhibit G.

12. The documents received from Ross Laboratories included a Visit Report, which discussed Plaintiff's lack of ownership and initiative and contained a notation regarding Mr. Lindberg's intention of discussing a performance plan for Plaintiff with Mr. Boisse, Plaintiff's supervisor. A true and accurate photocopy of this document dated April 16, 1993 and entitled

TM Visit Report, which was included in the documents received from Ross Laboratories in response to Defendants' subpoena, is attached hereto as Exhibit H.

13. On or about May 3, 1993, Mr. Boisse discussed Plaintiff's performance issues, including issues relating to his presentation skills, with Plaintiff. A true and accurate photocopy of a memorandum dated May 3, 1993 from Mr. Boisse to Plaintiff, which was included in the documents received from Ross Laboratories in response to Defendants' subpoena, is attached hereto as Exhibit I.

14. On or about August 23, 1993, Plaintiff was placed on "Unsatisfactory Performance status" at Ross Laboratories and was given a plan outlining objectives for him to achieve to improve his performance. A true and accurate photocopy of a memorandum dated August 23, 1993 from Mr. Boisse to Plaintiff bearing the subject line "Unsatisfactory Performance," which was included in the documents received from Ross Laboratories in response to Defendants' subpoena, is attached hereto as Exhibit J.

15. Plaintiff's personnel file contained a separation report signed by Mr. Boisse and dated October 15, 1993, which attaches a separation summary that characterizes Plaintiff's performance as "marginal," references his "[i]nability to develop close working relationships and rapport with key customers" and concludes that "[w]e employed interaction management skills as well as regularly scheduled work-withs and written communication relative to performance and progress for his feedback." A true and accurate photocopy of the October 15, 1993 separation report and summary is attached hereto as Exhibit K.

16. On or about July 9, 2004, Defendants served their First Set of Interrogatories on Plaintiff. Interrogatory Nos. 2 and 4 asked Plaintiff to describe his educational background and his employment history, respectively. On or about August 26, 2004, Plaintiff responded to

4

Defendants' Interrogatories indicating that he received a Bachelor of Science degree and listed several previous employers. A true and accurate photocopy of Plaintiff's response to Defendants' Interrogatory Nos. 2 and 4 is attached hereto as Exhibit L.

17. On or about July 9, 2004, Defendants propounded their First Request for Production of Documents on Plaintiff. Defendants request number 26 requested documents including diaries, calendars, chronologies of events, correspondence files, meeting notes, minutes, tape recordings, logs, e-mails or other records maintained between May 12, 1997 through the present. On March 28, 2005, Defendants received a letter from Plaintiff's counsel, enclosing 102 pages of handwritten notes responsive to this request. A true and accurate photocopy of the letter from Plaintiff's counsel enclosing these documents is attached hereto as Exhibit M.

18. On or about November 14, 2000, Ms. Edmunds gave a written warning to Plaintiff. That warning, Exhibit 8 to Plaintiff's deposition, is attached hereto as Exhibit N.

19. On or about September 2001, Ms. Edmunds gave a final written warning to Plaintiff. That warning, Exhibit 10 to Plaintiff's deposition, is attached hereto as Exhibit O.

20. Plaintiff was deposed in this action on October 18, 2004. True and accurate copies of excerpts of his deposition transcript are attached hereto as Exhibit P.

21. Deborah Edmunds, Plaintiff's supervisor, was deposed on October 25 and November 19, 2004. True and accurate copies of excerpts of her deposition transcript are attached hereto as Exhibit Q.

22. The job description for the pharmaceutical sales representative position states that a four year college degree is a requirement for the position. A true and accurate copy of the job description for pharmaceutical sales representatives, is attached hereto as <u>Exhibit R</u>.

Signed under the pains and penalties of perjury this 11th day of April 2005.

_____
Samia M. Kirmani