# EXHIBIT Q

Volume:    1
Pages:     1 - 312
Exhibits:  See Index

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM M. BYRD,                )
            Plaintiff,          )
                                )
        v.                      ) C.A. 04-11032-DPW
                                )
AVENTIS PHARMACEUTICALS, INC. )
and DEBRA EDMUNDS,              )
            Defendants.         )

DEPOSITION OF **DEBORAH A. EDMUNDS**, a

Witness called on behalf of the Plaintiff, taken

pursuant to the applicable provisions of the

Federal Rules of Civil Procedure, before Maureen

Nashawaty, a Notary Public within and for the

Commonwealth of Massachusetts, held at the

offices of Flavin & Koslowsky, 424 Adams Street,

Milton, MA, on Tuesday, October 26, 2004,

commencing at 10:10 a.m.

*COPLEY COURT REPORTING, Inc.*
101 Tremont Street
Boston, Massachusetts  02108
(617) 423-5841

DISK ENCLOSED

*C O N F I D E N T I A L    T E S T I M O N Y*    72

1    Byrd was terminated?

2        A.    Somewhat.

3        Q.    Do you recall who made the decision to

4    terminate Bill Byrd?

5        A.    It was a mutual decision.

6        Q.    Who was involved in the decision?

7        A.    Christine List, Mailet Minassian and

8    myself.

9        Q.    Who was the first to recommend

10    termination of Bill Byrd?

11        A.    It was a mutual decision really.

12        Q.    Are you saying all three of you had the

13    thought at the same time?

14        A.    No.   We don't have the thought at the

15    same time but we all recognized that there were

16    competencies that we tried to work with Bill to

17    get better on and they never improved or they

18    didn't improve to the standard that we needed.

19        Q.    When did you recognize this?

20        A.    I don't know what date.

21        Q.    Approximately?

22        A.    I believe the beginning of the process

23    to the end of the process was about a year

24    and-a-half.

1    Bill Byrd?

2                    MS. ACKERSTEIN:   Objection.

3         A.    It was on the written warning -- on the

4    final written warning.

5         Q.    But that is a basis for your

6    termination, is that correct?

7                    MS. ACKERSTEIN:   Objection.

8         A.    No, it is a combination of him not

9    following through consistently on all of these

10   areas including expense reports violations as

11   well.

12        Q.    I understand that.

13               So what I am getting at, I am trying to

14   find out it is my understanding that you were

15   involved in the decision to termination Bill

16   Byrd, is that correct?

17        A.    Correct.

18        Q.    And I am trying to find out what the

19   basis of that decision was?

20        A.    Lack of meeting these performances that

21   were written out on the written warning.

22        Q.    All right.  So these were the bases of

23   your terminating Bill Byrd, is that correct?

24                    MS. ACKERSTEIN:   Objection.

108

1      Q.    Now I want to jump to actually the

2   final written warning.

3           You put in here and I think one of the

4   reasons that you stated for his termination was

5   that you learned that Bill Byrd recently exceeded

6   Aventis entertainment expense guidelines?

7              MS. ACKERSTEIN:   Objection.

8      Q.    As well as recording the expenses

9   inaccurate, is that true?

10             MS. ACKERSTEIN:   Objection.

11     A.    It was a combination of everything in

12   this final written warning.

13     Q.    Is that one of the reasons for the

14   termination?

15             MS. ACKERSTEIN:   Objection.

16     A.    Expense guidelines?

17     Q.    Yes.

18     A.    If I recall correctly, yes.

19     Q.    Can you identify for me what

20   specifically you are talking about in this final

21   written warning?

22     A.    I believe it was the golf outing.

23     Q.    When you say the golf outing, what do

24   you mean by that?

*C O N F I D E N T I A L   T E S T I M O N Y*   134

1    receipt is.  Can you see the copy?   Stop & Shop

2    it says.

3            Do you see a date on this receipt, the

4    last page?

5            MR. KOSLOWSKY:  I don't see it but

6    this is the document that Aventis produced in

7    response to a Request for a Production of

8    Documents.

9        A.   It appears to be this receipt for the

10   $125.90 I assume is going towards the June 6th

11   Stop & Shop round table.

12       Q.   Is that an error?  Are you trying to

13   say --

14       A.   Where does $140.44 come from if the

15   receipt says $125.90?

16       Q.   So as I understand it, one of the

17   reasons that you terminated Mr. Byrd was because

18   of this expense report, is that correct?

19       A.   Falsifying expense report and call

20   activity.

21       Q.   You believe that he falsified this

22   expense report?

23       A.   Let me look at it.

24            On the first page of the receipts, the

312

1                    C E R T I F I C A T E

2

3     COMMONWEALTH OF MASSACHUSETTS

4     Norfolk, ss.

5

6           I, Maureen Nashawaty, a Registered

7     Professional Reporter and Notary Public in and

8     for the Commonwealth of Massachusetts, do hereby

9     certify that the foregoing transcript of the

10    deposition of **DEBORAH A. EDMUNDS**, having been

11    duly sworn, on Tuesday, October 26, 2004, is true

12    and accurate to the best of my knowledge, skill

13    and ability.

14          IN WITNESS WHEREOF, I have hereunto set

15    my hand and seal this 11th day of November, 2004.

16

17

18                  Maureen R. Nashawaty
                    Registered Professional Reporter

19

20

21    THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT
      DOES NOT APPLY TO ANY REPRODUCTION OF THE SAME BY
22    ANY MEANS UNLESS UNDER THE DIRECT CONTROL AND/OR
      DIRECTION OF THE CERTIFYING REPORTER.

23

24

# EXHIBIT R

## PHARMACEUTICAL SALES REPRESENTATIVE

**Job Title:**        Pharmaceutical Sales Representative
**Group:**           PCP 1-6
**Department:**      Primary Care
**Division:**         US Commercial Sales
**Location:**
**Grade Level:**     20 – 35 Dependent upon experience
**Manager:**
**Class:**            Exempt
**Travel:**           50-80%
**Posting Closes:**

### Job Duties:

This position will report to the Area Manager and is responsible for creating demand sales through the implementation and execution of national Aventis Pharmaceuticals sales strategies on a local level. PC Sales Representatives identify key influencers in the customer environment and interface with customers to present product features and benefits. Sales Representatives understand and address both business and scientific oriented needs.

### Education & Training Requirements:

- Four year college degree required
- One – Two years successful sales experience preferred
- Aptitude for learning technical and scientific product-related information
- Valid drivers license



DEF00974